J-S35030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF: D.J.F. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.J.F., FATHER | No. 3605 EDA 2015 |

Appeal from the Decree Entered November 2, 2015
In the Court of Common Pleas of Chester County
Orphans' Court at No(s): AD-2015-0044

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 06, 2016**

M.J.F. (Father) appeals from the decree entered by the Court of Common Pleas of Chester County involuntarily terminating his parental rights to his son, D.J.F. (Child), born in April of 2007. We vacate and remand for further proceedings.

This matter began with the filing of a termination petition by L.G.S. (Mother) and M.S. (Stepfather), seeking the termination of Father's parental rights to Child. A hearing was held on October 23, 2015, which resulted in the decree now on appeal. The court's decree contains the following factual information upon which the court based its decision:

> While the court does not endorse all of the behaviors of the custodial parent [Mother] in this case, ultimately the respondent birth [F]ather only has himself to blame for the situation in which he finds himself. The court will not recount here the evidence concerning his long criminal career. He admits that he is an addict, and that he has "a disease." That may be an explanation, but it does not give him a pass. [Father] was given an opportunity, not once but twice in 2014, to put his son ahead of his addictions. He was released from jail in January 2014 on the promise to remain drug–free. He was returned to prison a few months later having been violated as a result of continuing

drug abuse. During the time he was out, he did not see his son, blaming [M]other for refusing to transport the son to New Jersey for that purpose. He did speak once to his son on the telephone in April 2014. He did not try to do so again. [Father] was released from jail on or about November 3, 2014 with the proviso that any infraction would return him to custody as a violator. After only one and one-half weeks he was violated again for drug use and returned to state prison, where he remains.

He had a decision to make. He made his decision.

[Father] testified he knew that if he kept clean it would speed his path back to his son, but he did more drugs anyway. On another occasion in describing his attempts to reach his son by mail, he testified that while he sent drawings and cards to his son, he decided to "stay back" in deference to [M]other's wishes, although he knew that would "hinder communications." That was not what was required of him. The summary of these facts is what directs the court to enter the final decree.

Trial Court Final Decree, 11/2/15, at 1 n.1.

In his brief, Father explains that he and Mother were living together at the time of Child's birth until 2010. He also discusses Child's relationship with Father's parents, claiming that paternal grandparents have babysat Child, have helped financially, and have taken Child on vacations. He then discusses his drug issues and his guilty plea, which was entered on March 23, 2012, to charges of theft by unlawful taking and burglary for which he received a ten-year sentence (New Jersey sentence). Much of Father's statements center on his allegation about Mother's attempting to thwart any regular contact between him and Child. He also acknowledges that his last contact with Child was in April of 2014. Also, in lieu of face-to-face communication with Child, Father asserts that he has sent letters and gifts

to Child through paternal grandmother. However, he indicates that Mother refused to share her address with him or paternal grandmother and he did not know if the gifts or letters were received by Child. Father further claims that he had no updated information about Child's schooling or his activities. Father also states that he is considered to be on the prison's "privileged unit" due to his good behavior and that he is attempting to enlist in parenting programs offered to prisoners. Lastly, he discusses his testimony about his eligibility for parole "on October 5, 2016[,]" and that his maximum sentence runs until "late 2017, or early 2018." Father's brief at 11.[1]

Following the parental termination hearing, the court entered the termination decree pursuant to 23 Pa.C.S. § 2511(a)(1), (2) and (b). Father filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). He now raises one issue for our review:

> Did the trial court lack sufficient evidence, that is, clear and convincing evidence, and thereby abuse it's [sic] discretion in terminating parental rights in this matter, considering Mother's continued obstacles, thwarting of Father's rights, testimony of continued attempts for contact, Child's counsel/GAL position, and best interest and welfare of the Child?

---

[1] In response to Father's discussion about his ten-year New Jersey sentence, in her brief, Mother counters that Father produced no evidence other than his own testimony that he would be released at the latest in 2017 or early 2018. She notes that Father entered prison on January 30, 2011, and that if he does not secure early release, he could possibly be incarcerated until 2021.

Father's brief at 5 (unnecessary capitalization omitted).

We note that the various assertions of error contained in Father's issue, as stated in his brief, consolidate the errors Father listed in his concise statement of errors. In response to Father's statement, the court explained:

> [Father's] asserted Error Nos. 2-5 all have the same theme - the court failed "in fully considering" the facts or positions set forth in those errors. [Father] does not allege any partiality, prejudice, bias, ill-will or other alleged wrongdoing by the court which would support a claim of abuse of discretion. Nor does [Father] contend that the court reached determinations that were not supported by the record. Rather, the claim throughout the Concise Statement is that the court did not consider enough the various positions and arguments presented and/or advocated by [Father]. To the contrary, the court's [d]ecision demonstrates that it considered each of the positions submitted by the parties and all of the evidence. It thereafter reached an appropriate conclusion based upon that record.

Trial Court Opinion, 12/8/15, at 1-2.

We review a decree terminating parental rights in accordance with the following standard:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). The trial court is free to believe all, part,

or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003).

Termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *R.N.J.*, 985 A.2d at 276.

This Court must agree with only one subsection of section 2511(a), in addition to section 2511(b), in order to affirm the termination of parental

rights.  *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Herein, we review the decree pursuant to section 2511(a)(2) and (b), which

provide as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

To satisfy the requirements of section 2511(a)(2), the moving party

must produce clear and convincing evidence regarding the following

elements:  (1) repeated and continued incapacity, abuse, neglect, or refusal;

(2) such incapacity, abuse, neglect, or refusal caused the child to be without

essential parental care, control, or subsistence necessary for his physical or

mental well-being; and (3) the causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

In *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012), our Supreme Court addressed the relevance of incarceration in termination decisions under section 2511(a)(2). The *S.P.* Court held that "incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied." *S.P.*, 47 A.3d at 828.

As discussed above, Father's main point is that Mother interferes and thwarts his attempts to communicate with Child. In other words, Father claims that it is Mother's fault that Father did not perform his parental duties. Clearly, the trial court recognized that Mother's behavior was not admirable. However, the court found that despite the chances Father had to contact Child when he was intermittently released from jail, he did not take

advantage of these opportunities. Moreover, Father again and again was found to have violated his probation/parole and as a consequence was returned to prison. Additionally, Father presented no documentation to support his statements about his release date on the ten-year New Jersey sentence.

After reviewing the record in this case, we conclude that the evidence supports the court's decree terminating Father's parental rights to Child in that Father's repeated and continued incapacity, neglect, or refusal due to his incarceration has caused Child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being. In addition, the causes of Father's incapacity, neglect, or refusal cannot or will not be remedied in that there is no substantiated evidence related to when Father will be released from prison, and when he will be able to provide essential parental care to Child. There is only Father's self-serving testimony about his release date. Furthermore, Father's attempts to blame his lack of contact with Child on Mother appears not to have been believed by the court or at the very least did not counter his lack of effort to perform his parental duties. Therefore, we conclude that the court did not abuse its discretion or err as a matter of law in arriving at its conclusion that Mother carried her burden proving that Father's conduct or lack thereof satisfies the statutory grounds for termination in section 2511(a)(2).

With respect to section 2511(b), this Court has explained the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. **Id**. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. **In re K.Z.S.**, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. **Id**. at 63.

**In re Adoption of J.M.**, 991 A.2d 321, 324 (Pa. Super. 2010).

The only point the court made regarding section 2511(b) was that Child "was indifferent to [Father], and little pain should result." Trial Court Final Decree at n.1. The court also referenced the fact that "[c]hildren are young for a scant number of years" and that "[t]he court has an obligation to see to the child's healthy development quickly." **Id.**[2] Although these last

---

[2] We also note that a guardian *ad litem* (GAL) was appointed by the court and that Father references the GAL's position that the court should deny Mother's petition. However, the record received by this Court contains no documentation or testimony from the GAL, the court makes no reference to the GAL's opinion, and neither party provides any citation to the record in regard to anything submitted by the GAL. The only item, which Father attaches to his brief, is a copy of the GAL's "Report to the Court." However, because the report is not a part of the certified record, we are unable to consider it. **Eichman v. McKeon**, 824 A.2d 305, 316 (Pa. Super. 2003)
*(Footnote Continued Next Page)*

two statements by the court are true, the court's one sentence referencing Child's indifference to Father and that little pain should result is insufficient to address the requirements of section 2511(b). Therefore, we are constrained to vacate the decree terminating Father's parental rights and remand the matter so that the parties may present further evidence about emotional bonds, if any, between Father and Child and, particularly, what effect a termination of Father's parental rights would have on Child. ***See In re Termination of C.W.S.M.***, 839 A.2d 398 (Pa. Super. 2003).

Decree affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/6/2016

*(Footnote Continued)* _____

(stating "[a]ny document which is not part of the official certified record is considered to be non-existent, which deficiency may not be remedied by inclusion in the reproduced record").