Karen EICHMAN, Gregory Scott and Lawrence Branigan, Appellants,

v.

Joseph MCKEON, William Bradley and Edna McKeon, Appellees.

Superior Court of Pennsylvania.

Argued Feb. 4, 2003.
Filed May 7, 2003.

Stuart M. Niemtzow, Havertown, for appellants.

Donna L. Freidel, Haddonfield, N.J., for appellees.

Before: ORIE MELVIN, BOWES and BECK, JJ.

ORIE MELVIN, J.

¶ 1 This is an appeal by Karen Eichman, Gregory Scott and Lawrence Branigan (Appellants) from a judgment entered after a jury verdict in favor of Joseph and Edna McKeon (Appellees).[2]

2. Appellants had obtained a default judgment against Appellee William Bradley prior to trial.

Appellants raise numerous challenges to various trial court rulings and claim they are entitled to judgment notwithstanding the verdict or, alternatively, a new trial. After careful review, we affirm.

¶ 2 The relevant facts and procedural history may be summarized as follows. In 1996, Appellant Karen Eichman was renting a home owned by the McKeons situate at 5 Woodmont Trail, Conshohocken, Pennsylvania. Appellant Gregory Scott rented his home located on adjacent property at 4 Woodmont Trail which was owned by Appellant Lawrence Branigan. On December 31, 1996 a fire occurred at the Eichman residence and spread to the adjacent property where Mr. Scott lived. Both buildings sustained significant damage and much of the tenants' property was destroyed. The McKeons' filed a claim for and received first party benefits from Hartford Insurance Co. which conducted an investigation and eventually determined the cause of the fire to be arson. Consequently, Hartford denied benefits to Ms. Eichman for her loss.

¶ 3 Appellants thereafter filed the instant negligence lawsuit based upon their contention that the McKeons [3] had had repairs done to the furnace at the Eichman home by Appellee Bradley prior to the fire and that the work was negligently performed. The McKeons arranged for the repairs to be done after the fire department had responded in May 1996 to a call that smoke was filling the two adjoining houses, and faulty wiring of the furnace in Ms. Eichman's home was suspected. There was also evidence that Ms. Eichman subsequently arranged to have the furnace cleaned in October 1996 subsequent to the repairs and that it was operable over the next few months. Appellants sought to establish that the December 1996 fire was caused by faulty work on the furnace and/or the electrical system. Appellees, on the other hand, suggested that the fire did not originate in the furnace but rather started in a shed as the result of Ms. Eichman's negligence in failing to keep the premises safe or, alternatively, that an arson occurred. After trial, the jury returned a verdict in favor of Appellees finding that they were not negligent. Post-trial motions were denied and this timely appeal followed.

■ ¶ 4 Appellants raise numerous issues which they contend entitle them to judgment n.o.v. or a new trial. We begin with our scope and standard of review. "When reviewing a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the verdict winner, who must be given the benefit of every reasonable inference of fact. Any conflict in the evidence must be resolved in the verdict winner's favor." *Fanning v. Davne*, 795 A.2d 388, 392 (Pa.Super.2002)(quoting *Kiker v. Pennsylvania Financial Responsibility Assigned Claims Plan*, 742 A.2d 1082, 1084 (Pa.Super.1999)). The two grounds upon which judgment n.o.v. may be entered are (1) where the moving party is entitled to judgment as a matter of law, and (2) where the evidence was such that no two reasonable minds could disagree that the outcome should have been in favor of the moving party. *Fanning, supra.* "We will reverse the trial court only upon a finding of an abuse of discretion or error of law that controlled the outcome of the case." *Id.* at 393. Additionally, where credibility and the weight to be accorded the evidence are at issue, we will not substitute our judgment for that of the fact-finder. *Cruz v.*

---

**3.** We note that only Mr. McKeon participated at trial. However, for purposes of clarity and convenience, we shall refer to both Mr. and Mrs. McKeon as Appellees throughout this memorandum.

*Northeastern Hospital,* 801 A.2d 602 (Pa.Super.2002) (citation omitted).

■■■ ¶ 5 Similarly, our standard of review of a denial of a motion for new trial is limited to a determination of whether the trial court committed an error of law that controlled the outcome of the case, or committed an abuse of discretion. *Fanning, supra.*

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the judgment is the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

*Fanning,* 795 A.2d at 393 (quoting *Paden v. Baker Concrete Construction, Inc.,* 540 Pa. 409, 412, 658 A.2d 341, 343 (1995)). We shall address Appellants' arguments in the order presented.

## I. Motion for Judgment N.O.V.

■■ ¶ 6 Appellants first contend that they are entitled to judgment n.o.v. based upon the McKeons' intentional spoliation of the evidence. They assert that in March 1997, nearly three months after the fire occurred, Ms. Eichman engaged an expert who attempted to gain access to the properties to conduct an investigation. However, when the expert and Ms. Eichman arrived to view the premises on March 12, 1997, they were unable to gain entry into the interior of the building.

They were informed that the premises were unsafe and that a township-directed demolition was scheduled to occur the next day. Consequently, at the request of Appellants' counsel, the McKeons arranged to remove the furnace from the building prior to demolition and it was preserved for inspection by Appellants' expert.

¶ 7 Throughout the trial, Appellants emphasized their inability to conduct a thorough examination of the fire scene. They argued unsuccessfully to the trial court that they were entitled to judgment as a matter of law based upon the McKeons' intentional spoliation of the evidence by refusing to permit Appellants' expert to view the premises before demolition. The trial court did grant their alternative request for a jury instruction which permitted an adverse inference to be drawn from the McKeon's destruction of the property;[4] however, Appellants assert on appeal that this conduct was so egregious that a more severe sanction was warranted.

■■ ¶ 8 Our Supreme Court set forth the approach to be taken with respect to a spoliation of evidence claim in *Schroeder v. Department of Transportation,* 551 Pa. 243, 710 A.2d 23 (1998). There, the plaintiff's decedent was involved in an accident while driving a truck on a state road, and a fire thereafter broke out in the engine area. The driver died at the scene. The plaintiff filed suit against both the seller and manufacturer of the truck as well as the Department of Transportation, claiming negligence, strict liability and breach of warranty. Despite the plaintiff's attempt to preserve the evidence, the truck was sold, and the trial court granted summary judgment in favor of the defendants based upon spoliation of the evidence. The Commonwealth Court affirmed; however, our Supreme Court reversed and

---

4. *See* N.T. Trial, 10/16/00, at 32–33, 201–02.

remanded. In its decision, the Court addressed the factors to be considered in determining an appropriate sanction for failure to preserve evidence: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party, and (3) the availability of a lesser sanction that will protect the opposing party's rights and deter future similar conduct." *Id.* at 250, 710 A.2d at 27 (adopting the test of the Third Circuit in *Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76 (3rd Cir.1994)). In so doing, our Supreme Court found this approach relevant to destruction of evidence against both a product liability defendant and a non-product liability defendant. The Court concluded that a lesser sanction, such as an instruction to the jury that an adverse inference may be drawn from the plaintiff's failure to preserve the evidence, was appropriate and that summary judgment was not warranted.

¶ 9 This Court has recently addressed the issue of spoliation of the evidence in two somewhat factually similar cases. In *Oxford Presbyterian Church v. Weil-McLain Co., Inc.*, 815 A.2d 1094 (Pa.Super.2003), a fire destroyed a church in May 1989. After settling the claim, the church's insurer sought to discover the cause of the fire and subsequently filed subrogation claims against several companies which had been involved in maintaining or repairing boilers in the basement. Although the church had preserved the physical evidence salvaged from the fire scene at a storage facility, it was later learned that the evidence could not be found. The defendant was therefore unable to examine or inspect the evidence and could not investigate its own theory of cause and origin of the fire. The trial court gave an adverse inference instruction to the jury for the church's failure to preserve the evidence. After a jury verdict in

favor of the defendant, this Court affirmed. We noted that such an instruction is a common sanction given for spoliation of the evidence and found no abuse of the trial court's discretion in granting this request.

¶ 10 *Mount Olivet Tabernacle Church v. Wiegand*, 781 A.2d 1263 (Pa.Super.2001) also involved a church fire. There, the appellant had manufactured an immersion heater which the church used to heat a baptismal pool. After a substantial fire in November 1994, the church filed suit against the appellant claiming that the heater was defective and caused the fire. At trial, the appellant sought a sanction against the church for intentionally destroying the fire scene without providing the appellant with an opportunity to conduct an investigation. The appellant argued it was prejudiced by an inability to determine whether the fire started elsewhere in the church; however, the trial court refused to give an adverse inference instruction. On appeal, after a jury verdict in favor of the church, this Court affirmed. We explained that we review a trial court's decision to grant or deny a spoliation instruction by determining whether there has been an abuse of discretion. *Id.* at 1269. We also noted that the decision of whether and how to sanction a party rests within the sound discretion of the trial court. *Id.* And, we further recognized that "[a]n abuse of discretion is not merely an error in judgment; rather it occurs when the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will." *Id.* Additionally, we reasoned that the relevant factors set forth for evaluating a spoliation claim are applicable where alternative potential causes of an accident are lost or destroyed. *Id.* at 1270. Under the facts presented, we found no abuse of the trial

court's discretion in refusing to give a spoliation instruction or to impose any sanction on the church.

¶ 11 In the case at bar, we are presented with a claim that the McKeons also intentionally destroyed the fire scene without providing Appellants with an opportunity to conduct an investigation. Appellants assert that the McKeons were immediately aware of the likelihood of litigation and had specific knowledge that such evidence should be preserved when Ms. Eichman and her expert arrived to inspect the scene. Among other cases, Appellants cite *Pia v. Perrotti*, 718 A.2d 321 (Pa.Super.1998), *appeal denied*, 558 Pa. 621, 737 A.2d 743 (1999). There, a warehouse caught fire and investigation revealed the cause to be an electrical malfunction in a corner of the building, although the source of the fire could not be identified. The appellant and her experts removed certain items involving the building's electrical wiring which they believed to be relevant, and the remainder of the electrical equipment was discarded. On appeal to this Court after a defense verdict, we affirmed the trial court's decision to give a spoliation inference instruction. We noted that the appellant bore some responsibility for the lost equipment, and even though the appellees suffered some prejudice they were not unable to assert a defense.

¶ 12 Instantly, Appellants' argument is premised on their conviction that the McKeons' conduct was intentional and a clear display of willful bad faith, which they insist warrants nothing less than judgment in their favor. In resolving this issue, we must examine the record to determine whether the spoliation inference was an appropriate sanction in light of the relevant factors enunciated in *Schroeder, supra*, namely degree of fault, degree of prejudice, and the availability of a lesser sanction.

¶ 13 The record reveals that after the December 31, 1996 fire, the township of Lower Merion sent a letter to the McKeons on January 7, 1997 stating that the building was unsafe and dangerous and should be demolished or rebuilt. The McKeons' son made the necessary arrangements for demolition, which was ultimately scheduled for March 13, 1997. Several witnesses testified to the hazardous condition presented by the fire scene. On the day before the demolition was to occur, Ms. Eichman and her expert attempted unsuccessfully to investigate the premises. Consequently, counsel for Appellants wrote a letter asking that the furnace be salvaged, which was accomplished. Additionally, numerous photographs of the actual fire scene were made available to Appellants, as were the results of investigations conducted by township officials.

¶ 14 Applying the factors, we find that the McKeons bore little responsibility for the demolition of the fire scene. This drastic measure was taken in response to a township directive which recognized the dangerous condition presented on the site. No request to inspect the scene was made until nearly three months had passed, the day before the already-delayed demolition was to occur. At that time the McKeons were simply asked to preserve the furnace and they did so. As such, the McKeons' degree of fault for failing to preserve the fire scene is minimal. *See Mount Olivet, supra*, at 1271 (stating that "the scope of the duty to preserve evidence is not boundless,")(quoting *Baliotis v. McNeil*, 870 F.Supp. 1285, 1290 (M.D.Pa.1994)). Moreover, the trial court which presided over this lengthy trial did not find that the McKeons acted in bad faith, and we find no abuse of discretion in making this assessment regarding fault. *Id.* at 1271–72 (stating that a component of fault is the

presence or absence of good faith, which requires a deferential standard of review.)

¶ 15 We similarly find a low degree of prejudice to Appellants. Although they were precluded from conducting their own independent investigation to ascertain alternate potential causes of the fire, the furnace itself was preserved as requested. In addition, Appellants had available a substantial amount of photographic and other documentary evidence from inside the building, as well as an independent investigation by township officials. Appellants were also able to obtain their own photographs and evidence from an inspection outside the structure. Their own expert possessed sufficient information to express an opinion that an electrical system failure allowed the furnace to overheat and ignite nearby combustible material in the basement, causing the fire. Based on all of the foregoing, the prejudice to Appellants is clearly of minor consequence. *See id.* (finding that prejudice is less severe where an independent investigation has taken place, particularly where the object itself has been preserved and other evidence from the scene is available.)

¶ 16 With respect to the third factor, the trial court refused to enter judgment in favor of Appellants and concluded that the lesser sanction of a spoliation instruction was appropriate. Having agreed with the trial court that there was little fault on the part of the McKeons and minimal prejudice to Appellants, we find no abuse of discretion in the determination that a less severe penalty was warranted. We therefore reject this claim.

¶ 17 In a related argument, Appellants maintain that they are entitled to judgment in their favor as a result of blatant discovery violations made by the McKeons' counsel. The record reveals that during discovery, Appellants had requested that Hartford Insurance Co. provide the file relating to the McKeons' claim for first party benefits after the fire. Appellants were told that this file was lost. At one point during trial, Appellants learned for the first time that Hartford had a computer log of activity pertaining to that first party claim which was kept separate from the file, although the file itself had never been located. The trial court went so far as to preside over a deposition of a Hartford claim consultant on a lunchtime recess during trial, at which Appellants requested a printout of the computer logs. These were provided to the trial court and to counsel for Appellants later that day.

¶ 18 The next morning Appellants' counsel asserted that the computer logs had been in the McKeon's counsel's possession for over a year and that his failure to provide them to Appellants constituted a violation of a previous discovery order. They asked for a jury instruction that an adverse inference may be drawn from the lost file and further requested a one-day continuance to investigate the substance of the computer logs. Specifically, Appellants argued that the logs indicated that one of the McKeon's experts hired by Hartford, Mr. Christmas, may have changed his opinion on whether the fire was caused by arson.[5] The trial court, having reviewed the contents of the logs, found no continuance was necessary as no new information was contained therein. The court stated, however, that it would entertain a request for rebuttal evidence should Appellants uncover additional evi-

5. Counsel stated, "We want to present to the jury there was a file created by the insurance company somehow or by the investigators for the defendant that has disappeared and that it might have contained a different opinion and probably did contain a different opinion or might have." N.T. Trial, 4/12/00, at 38.

dence regarding the missing file or its contents. Despite this ruling Appellants declined to present such evidence when the McKeons' rested.

¶ 19 Appellants concede that the computer logs are not part of the certified record on appeal; we also note that the transcribed deposition testimony of the claims consultant is also not included in the official record. "It is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record in this case." *Bennyhoff v. Pappert,* 790 A.2d 313, 318 (Pa.Super.2001) (citation omitted). Any document which is not part of the official certified record is considered to be non-existent, which deficiency may not be remedied by inclusion in the reproduced record. *Id.;* Pa.R.A.P.1921. It is the responsibility of the appellant to provide a complete record to the appellate court on appeal, including transcription of deposition testimony. *McNeal v. Eaton Corp.,* 806 A.2d 899 (Pa.Super.2002). Where a review of an appellant's claim may not be made because of such a defect in the record, we may find the issue waived. *Bennyhoff, supra.*

¶ 20 Instantly, Appellants do no more than baldly assert that they have been extremely prejudiced by the failure of the McKeons' counsel and/or Hartford Insurance Co. to provide copies of the computer logs before trial. They also surmise that the failure to produce this information was nothing short of willful and deliberate. As best can be discerned from Appellants' brief, they believe that the information in the computer logs supports their position that Mr. Christmas changed his opinion sometime during the course of the investigation from "suspicious" to "arson."

¶ 21 To the extent that review of this argument requires examination of the computer logs, it has been waived. *Id.*

Moreover, we find this claim meritless in any event. "[T]he decision whether to sanction a party for a discovery violation and the severity of such a sanction are matters vested in the sound discretion of the trial court." *Philadelphia Contributionship Insurance Co. v. Shapiro,* 798 A.2d 781, 784 (Pa.Super.2002) (citation omitted). The trial court explained that it reviewed the computer logs and found nothing new contained therein which would justify a sanction; additionally it refused to find a willful discovery violation. We find no abuse of its discretion in determining that no sanction was warranted. Moreover, we cannot perceive any prejudice to Appellants. They were able to and did extensively cross-examine Mr. Christmas and other defense experts as to their opinions on the cause of the fire and whether those opinions changed during the course of their investigations. Although Appellants were given an opportunity to present rebuttal evidence regarding the computer logs and/or the loss of the claim file, they chose not to do so. Appellants bare assertions that this "new" evidence constituted a "smoking gun" simply has not been established on this record, and accordingly we find no basis for granting them the relief they request. This claim must fail.

¶ 22 Appellants appear to concede that the other alleged discovery violation is insufficient, standing alone, to warrant judgment n.o.v. We must agree. In this argument Appellants claim that a deposition of the man whom Ms. Eichman hired to clean the furnace in October 1997 was improperly cancelled by the McKeons' counsel who took a statement from the witness instead. Appellants complain that the statement was not provided to them in a timely manner and that they were further surprised when the McKeons' counsel questioned this witness at trial about a

message which Ms. Eichman had left on his answering machine. Review of the record reveals that the witness was called to testify on behalf of Appellants. On cross-examination, the McKeons' counsel asked the witness about the answering machine message and asked if he had the tape available to play to the jury. N.T. Trial, 4/4/00, at 160. Appellants' counsel objected and stated as follows:

Stipulate Miss Eichman told him she has no interest in suing him, wanted him to talk to me. I'll stipulate to that.

*Id.* Thus the tape was not played.

¶ 23 Here, where counsel stipulated to the contents of the message and had already questioned the witness on direct examination on this very subject, we cannot find merit to their claim of unfair surprise simply because Appellants characterize this situation as an "ambush." Appellant's brief at 31. Once again we find no abuse of the trial court's discretion in refusing to impose a sanction on this basis. For all of these reasons, we find no abuse of discretion or error of law that controlled the outcome of the case and accordingly will not reverse the denial of their motion for judgment n.o.v.

## II. Motion for New Trial

¶ 24 We next address Appellants various contentions which they believe entitle them to a new trial. They raise five arguments relating to the charge to the jury, which we shall review with the following standard in mind.

When examining jury instructions, our scope of review is to determine whether the trial court committed clear abuse of discretion or error of law controlling the outcome of the case. Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error. When reviewing a charge to the jury, we will not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety.

*Pioneer Commercial Funding Corp. v. American Financial Mortgage Corp.,* 797 A.2d 269, 283–84 (Pa.Super.2002) (citation omitted).

¶ 25 Appellants find fault with the trial court's refusal to instruct the jury that they could derive an adverse inference from Mr. McKeon's failure to testify at trial. The record reveals that Appellants read to the jury, as admissions, portions of his deposition testimony regarding his knowledge of the condition of Ms. Eichman's furnace and his hiring of Mr. Bradley. N.T. Trial, 4/10/00, at 221–49. However, Mr. McKeon did not testify on his own behalf. It is true that a party's failure to testify at a civil trial may raise an inference that the party's testimony would have been unfavorable to him. *Fitzpatrick v. Philadelphia Newspapers, Inc.,* 389 Pa.Super. 438, 567 A.2d 684 (1989), *appeal denied,* 525 Pa. 618, 577 A.2d 890 (1990). However, it is also well-settled that "if a plaintiff has not supplied evidence sufficient to meet his burden of proof, the adverse inference created by the defendant's failure to testify will not supply it for him." *Id.* at 688. Thus, Appellants bore the burden of establishing negligence on the part of the McKeons, and, even with his deposition testimony, the jury

found they failed to do so.[6] No adverse inference could have filled this gap in establishing their right to recover, and we therefore cannot conclude that the absence of this instruction controlled the outcome of this case.

¶ 26 Next Appellants contend that the trial court refused to give an adverse inference instruction on the conduct of Mr. McKeon in preventing Ms. Eichman and her expert from investigating the scene. Because this assertion is clearly belied by the record, see N.T. Trial, 4/16/00, at 200–01, we reject this argument.

¶ 27 Next Appellants challenge the refusal by the trial court to instruct the jury on missing evidence because of the lost claim file. We reiterate that a decision whether to impose sanctions for a discovery violation rests within the discretion of the trial court. Here, the trial court explained that it found no evidence of a willful withholding of this evidence and also that Appellants suffered little, if any, prejudice. Under these circumstances, we are unable to find an abuse of discretion in refusing to give an adverse inference instruction as a sanction.

¶ 28 Appellants also challenge the failure of the trial court to instruct the jury on negligent undertaking. However, the trial court did charge the jury on the substance of this legal theory. N.T. Trial, 4/16/00 at 197–00. Appellants' similar argument with respect to the effect of admissions of a party was also covered by the trial court's charge. N.T. Trial, 4/16/00 at 179. We must reject these contentions which are clearly contradicted by the record.

¶ 29 Additionally, Appellants complain that the jury was not told about the relationship between the McKeons' experts and Hartford Insurance Co. However, Appellants were permitted, over objection, to elicit testimony that certain defense experts were hired by the insurance company. N.T. Trial, 4/12/00, at 227–29, 232–33. Thus the jury was informed of a potential for bias on the part of the experts. The trial court also gave a general instruction on evaluating the testimony of witnesses, including considerations of possible bias or prejudice and whether the witness had an interest in the litigation. Id. at 180–81. We find no error nor abuse of discretion in the trial court's refusal to give a specific instruction such as that suggested by Appellants in this regard.[7]

¶ 30 Appellants also challenge two portions of the trial court's charge to the jury which they assert should not have been given. They dispute that an instruction on Ms. Eichman's contributory negligence was proper, contending that her decision to hire someone to clean the furnace cannot establish negligence on her part. However, the record contains evidence that Ms. Eichman did not properly maintain the furnace in prior years and that a buildup of soot caused or contributed to the May 1996 smoke occurrence; there was further evidence that Ms. Eichman stored flammable materials in the shed to the rear of the house which could have been a factor in the fire and resulting destruction. The law is clear that a trial court must instruct the jury on comparative negligence whenever there is any such

6. We also note that, contrary to Appellants' assertion in their brief, they did make an argument during their closing regarding Mr. McKeon's failure to testify at trial. See N.T. Trial, 4/16/00, at 100, 106–06, 168–69.

7. Indeed, "[t]he general rule in Pennsylvania is that evidence of insurance is irrelevant and prejudicial[.]" Allied Electrical Supply Co. v. Roberts, 797 A.2d 362, 364 (Pa.Super.2002), appeal denied, 570 Pa. 680, 808 A.2d 568 (2002) (citation omitted).

evidence of negligence on the part of the plaintiff. *Zieber v. Bogert*, 747 A.2d 905 (Pa.Super.2000), *affirmed*, 565 Pa. 376, 773 A.2d 758 (2001). Moreover, this jury never reached the question of Ms. Eichman's contributory negligence because it found that Appellants did not establish negligence on the part of the McKeons. Hence this claim clearly merits no relief.

¶ 31 The other challenged instruction which Appellants claim was erroneously given by the trial court is that it could consider the McKeons' negligence separately from that of Mr. Bradley. Appellants cite no pertinent authority to support this bald assertion of error, thus we find this claim to be waived. *Estate of Haiko v. McGinley*, 799 A.2d 155 (Pa.Super.2002). "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." *Id.* at 161; Pa.R.A.P. 2119(b). Failure to do so constitutes waiver of the claim. *Id.*

¶ 32 In any event, our review of the trial court's charge as a whole reveals that the trial court accurately conveyed the law with respect to negligence on the part of the McKeons. Accordingly, because we have found that the jury instructions when read in its entirety made the issues clear to the jury and there was no omission in the charge amounting to fundamental error, we must reject Appellants' several claims of error in the charge.

¶ 33 Next Appellants raise two allegedly erroneous rulings by the trial court made without giving them an adequate opportunity to make oral argument in support of their position. These rulings involve a refusal to submit their claim of punitive damages to the jury and a failure to rule on certain motions in limine. Once again Appellants omit any legal discussion with reference to appropriate authority,

and thus these arguments are waived. *Id.* Furthermore, a bald assertion of error by the trial court without any attempt to demonstrate prejudice will not provide a basis for relief. *See Oxford Presbyterian Church, supra* at 1100 (explaining that an appellant must show error in the challenged evidentiary ruling and resulting prejudice in order to show an abuse of discretion by the trial court.) *See also Estate of Haiko, supra* at 161 (stating that "[i]t is not this Court's function or duty to become an advocate for the appellant.") Accordingly, we also reject these contentions.

¶ 34 Lastly, Appellants raise three instances of evidentiary rulings on which, presumably, they were given an adequate opportunity to argue during trial but unsuccessfully so. It is well settled that the admission or exclusion of evidence is a matter within the sound discretion of the trial court, which may only be reversed upon a showing of a manifest abuse of discretion. *Johnson v. Hyundai Motor America*, 698 A.2d 631, 636 (Pa.Super.1997), *appeal denied*, 551 Pa. 704, 712 A.2d 286 (1998). Evidence must be relevant to be admissible. Pa.R.E. 402. Additionally, relevant evidence which is prejudicial, misleading, or merely cumulative may be excluded and is reviewed for an abuse of discretion of the trial court. Pa.R.E. 403; *Yacoub v. Lehigh Valley Medical Associates, P.C.*, 805 A.2d 579 (Pa.Super.2002).

¶ 35 The alleged evidentiary errors involve (1) Appellants' inability to offer certain testimony regarding the cause of the fire; (2) the trial court's refusal to permit cross-examination of Mr. Christmas with the actual computer logs; and (3) the reference to the answering machine tape at trial. Each of these claims is waived because Appellants do not provide any legal

discussion nor citation to relevant authority. *Estate of Haiko, supra.* Moreover, we have carefully reviewed the record in its entirety and find no abuse of discretion in these evidentiary rulings by the trial court.[8]

¶ 36 Judgment affirmed.

---

**8.** Because Detective Gilbert testified that he could not determine the cause of the fire, there was no error in sustaining the objection to Appellants' questions designed to invite speculation on cause. Appellants' attempt to call a fire marshal on rebuttal was properly excluded as cumulative of earlier testimony. Counsel was permitted to, and did, cross-examine Mr. Christmas extensively on his conclusions regarding the cause of the fire and whether his opinion changed during the course of the investigation, and reference to the actual logs was plainly unnecessary to effectively do so. And, as previously discussed, the content of the answering machine tape was already in evidence and questions relating to the tape could not therefore constitute prejudicial surprise.