J-A26031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BT STONE HILL, LP | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ASHLEY DEVELOPMENT | : | No. 970 EDA 2021 |
| CORPORATION | : | |

Appeal from the Judgment Entered April 14, 2021
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
2019-C-0322

BEFORE:  BOWES, J., STABILE, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED DECEMBER 21, 2021**

BT Stone Hill, LP (Appellant) appeals from the judgment entered in the Lehigh County Court of Common Pleas, after a non-jury trial, in favor of Ashley Development Corporation (Appellee) in the amount of $0.00.[1]  Appellant

_____

[1] On April 14, 2021, the trial court entered an order announcing its verdict in favor of Appellee.  On the same day — and thus before the 10-day period for filing a post-trial motion expired — the court also entered judgment.  ***See Shonberger v. Oswell***, 530 A.2d 112, 115 (Pa. Super. 1987) (an "initial[ ] and erroneously labelled[ ] judgment[,] entered before the filing and denial of post-verdict motions, . . . was premature and void").  On April 23rd, Appellant filed a post-trial motion and, before the trial court ruled on it, a notice of appeal on May 14th.  On May 19th, the court filed an order, staying the post-trial motion pending this appeal.

On July 9, 2021, this Court issued a *per curiam* rule to show cause on Appellant as to whether this Court had jurisdiction to hear the appeal.  ***See Melani v. Nw. Eng'g, Inc.***, 909 A.2d 404, 406 (Pa. Super. 2006) ("The entry of an appropriate judgment is a prerequisite to this Court's exercise of jurisdiction and 'an appeal filed while a post-trial motion is pending before

*(Footnote Continued Next Page)*

alleges the trial court erred when it found: (1) it did not suffer actual damages; (2) Appellee did not breach its indemnity agreement with Appellant; and (3) Appellant's unjust enrichment claim was precluded because "the relationship between Appellant and Appellee was governed by a contract[.]"  Appellant's Brief at 27.  For the following reasons, we affirm.

Appellant, a real estate development company in Altoona, Pennsylvania, is owned by its sole managing member, Bruce Thaler.  Appellee, a land planning and development firm in Bethlehem, Pennsylvania, is owned by its sole shareholder, Louis Pektor.

_____

[the] trial court will be considered premature . . . .'").  Appellant responded that although it had filed the post-trial motion, "in an abundance of caution, and given that the Trial Court's Order went as far as to enter judgment in favor of Appellee, Appellant thought it appropriate to adequately preserve its appeal rights by timely filing an appeal within 30-days of the Trial Court's Order[.]" Appellant's Show Cause Brief at 14-15.  Appellant argued this Court has jurisdiction over this matter, where "the Trial Court failed to take any action within the 30-day time period following the entry of judgment that would toll the . . . time for appeal[.]" *Id.* at 15-16.

In light of the foregoing, including Appellant's lack of objection to the trial court's **not** ruling on its post-trial motion, as well as the lack of any objection by Appellee, we deem Appellant's May 14, 2021, notice of appeal timely filed.  *See*, *e.g.*, *Eichman v. McKeon*, 824 A.2d 305, 310, n.1 (Pa. Super. 2003) ("As judgment was properly entered on February 21, 2001, we will regard as done what ought to have been done and treat this appeal as if properly filed from the judgment.").

While counsel for Appellant purports to appeal from the **order** docketed on April 14, 2021, we note the appeal properly lies from the judgment entered in favor of Appellee docketed the same day.  We have corrected the caption accordingly.

- 2 -

The trial court made the following findings of facts. In May 2007, Appellee obtained a $561,000 loan from Embassy Bank, secured by the "Bergstresser" and "406-408 East Third Street" properties.[2] Trial Ct. Op., 4/14/21, at 6. The maturity date of the loan was February 28, 2013. First Omnibus Amendment to the Indemnity Agreement, 3/25/13, at 1.

On March 25, 2013, Appellant, Appellee, and Embassy Bank signed an Omnibus Agreement, wherein they agreed to shift the collateral from Appellee's Embassy Bank loan to a property Appellant owned in Lower Macungie Township in Lehigh County, Pennsylvania. First Omnibus Amendment to the Indemnity Agreement at 1; Trial Ct. Op. at 6-7. Additionally, the maturity date of Appellee's Embassy Bank loan was extended approximately three years, to March 30, 2016. *Id.* Appellant signed this agreement as Limited Guarantor. Trial Ct. Op. at 7.

On the same day, Appellee signed an Indemnity Agreement with Appellant. Trial Ct. Op. at 7. In relevant part, the indemnity agreement provided:

> 3. In consideration of the execution by [Appellant] of the Mortgage and Guaranty, [Appellee] agrees to pay [Appellant] an annual fee equal to 1% of the outstanding balance of the Loan payable upon execution of this Agreement and upon each anniversary thereafter until the Loan is paid in full. The outstanding balance of the Loan shall be determined as of the close of business the day prior to the date upon which the payment is due.

---

[2] The record does not indicate where these properties are located.

- 3 -

4. [Appellee] agrees to indemnify [Appellant] from and against any claims, demands, losses, damages, liabilities, costs and expenses, including attorneys' fees, which [Appellant] may incur in connection with the Guaranty or the Mortgage or which are in any way related to Embassy's or its successor's exercise of their rights and remedies under the Mortgage, the Guaranty, or the Loan against [Appellant], including, without limitation, any amounts [Appellant] may pay in compromise or settlement of any of the foregoing.

5. In the event [Appellee] fails or refuses to pay any amounts due to [Appellant] pursuant to this agreement within ten (10) days of written demand therefor from [Appellant, Appellant] shall be entitled to all rights and remedies available in law or in equity to collect such amounts shall accrue interest at the rate of ten (10%0 percent per annum until paid.

Indemnity Agreement, 3/25/13, at 1-2 (unpaginated).

In September 2015, Appellant sought financing from **Malvern Bank** "to move forward with construction at [its property] encumbered by the $561,000 Mortgage held by Embassy Bank as collateral for" Appellee's Embassy Bank loan.[3]  Trial Ct. Op. at 8 (footnote omitted); N.T. Non-Jury Trial, 12/3/20, at 54.  However, Malvern Bank required the Embassy Bank loan be satisfied, paid off, or "moved"[4] because Malvern Bank would not "permit any subordinate debt."  Trial. Ct. Op. at 9; N.T. Non-Jury Trial, at 34, 54.

On September 16, 2015, **Embassy Bank** approved Thaler and his wife, Phyllis, in their **individual** capacities, for a "personal commercial" loan for

---

[3] The trial court stated Thaler obtained financing from Malvern Bank, however the notes of testimony clarify it was Appellant who sought financing.  Trial Ct. Op. at 8 (footnote omitted); N.T. Non-Jury Trial, 12/3/20, at 54.

[4] Throughout his testimony, Thaler stated the loan must be "moved," but did not provide further explanation.  **See** N.T. Non-Jury Trial, at 34, 54.

$360,000. Trial Ct. Op. at 9. On the same day, Appellant notified Appellee by letter, of the amount — $566,252.33 — needed to fully satisfy the Embassy Bank loan, interest, and fees. *Id.* Additionally, on September 18th, Thaler emailed Pektor, notifying him that **Appellant** received a loan commitment from Malvern Bank. *Id.* Thaler stated that Malvern Bank would not "permit any subordinate debt," and if Pektor/Appellee could not pay off the $561,000 Embassy Bank loan, Thaler would "personally lend" Pecktor/Appellee the money "from [his] line of credit[.]" *Id.* The email included a demand note for $566,252.33. *Id.* On September 21st, Appellant, through its general partner BT Management, LLC, sent a follow up email to Pektor regarding the Embassy Bank loan. *Id.* at 10.

Pektor did not sign the September 18, 2015, demand note individually or on behalf of Appellee, nor did he agree to satisfy Appellee's Embassy Bank loan before the March 30, 2016, maturity date. Trial Ct. Op. at 10. On September 23rd, Thaler and his wife, in their individual capacities, took out the Embassy Bank "personal commercial" loan in the amount of $360,000. Appellee's entire $561,000 loan was paid in full in one sum. The Thalers applied their entire $360,000 loan towards the payment. Thaler provided testimony at trial that the remaining balance could have come from "anywhere" and that he paid it "personally." N.T. Non-Jury Trial, at 31, 33. The trial court found the Thalers personally paid the entire Embassy bank

loan.[5]  Trial Ct. Op. at 10.  The Thalers had "no personal guaranty obligating" them to pay off the Embassy bank loan for $561,000.  *Id.* at 10-11 (footnote omitted); N.T. Non-Jury Trial, 12/3/20, at 30-33.

"At most, seven days elapsed between the first written demand for payment of [Appellee's Embassy Bank loan]" and the Thalers' payment on the Embassy Bank loan.  Trial Ct. Op. at 10.  On December 16, 2015, Pektor emailed Thaler "express[ing] his displeasure" with Thaler's decision to pay Appellee's Embassy bank loan.  *Id.* at 11.  After December 2015, there was no communication between the parties regarding the payment of the Embassy Bank loan or the indemnity agreement until this litigation commenced on January 31, 2019.  *Id.* at 4, 12.

On January 31, 2019, Appellant filed a two-count complaint against Appellee, first asserting breach of contract.  Appellant averred the parties' March 25, 2013, Indemnity Agreement entitled it to, at any time, demand

---

[5] The trial court stated the Thalers personally paid the entire $561,000 loan. Trial Ct. Op. at 10.  However, at trial Thaler testified that the remaining amount paid "could have been made from anywhere" and he "would have no idea."  *See* N.T. Non-Jury Trial, at 30-33.  Thaler testified, contradicting his statement that the payment could have come from "anywhere," the Embassy Bank loan was paid by "a combination of cash and another mortgage through [Thaler] **personally**."  *See id.* at 31 (emphasis added).

At trial, Appellee's counsel stated Appellant "provided [ ] a closing spreadsheet that shows a payoff from [Appellant] to the Embassy Bank loan [in the amount of] $206,319.33.  The balance [ ] owed on that loan was paid by [the Thalers] personally."  N.T. Non-Jury Trial at 6.  On appeal, Appellee contests that this was accepted as a stipulation by the trial court. Appellee's Brief at 24-27.

Appellee to pay off its $561,000 loan with Embassy Bank, or to reimburse Appellant if it paid off the loan. The complaint then claimed Appellee failed "to timely reimburse it for all costs incurred" with Appellant's paying off Appellee's Embassy Bank loan; Appellant alleged damages of $754,589.41 plus costs and attorneys' fees. Trial Ct. Op. at 13. The complaint then presented, in the alternative, a cause of action for unjust enrichment. On May 14, 2019, Appellee filed an answer to the complaint with new matter. On May 31st, Appellant answered Appellee's new matter.

Following an unsuccessful mediation, this case proceeded to a remote-video non-jury trial on December 3, 2020. Trial Ct. Op. at 5. Thaler admitted that he and his wife, in their individual capacities, paid the loan owed by Appellee to Embassy Bank through a "combination of cash and a personal commercial loan." *Id.* at 10. Thaler testified he paid Appellee's loan because of a "personal guaranty" and "because he wanted to protect his reputation with Embassy Bank." *Id.* at 11. Thaler further testified that he "is" Appellant, and it is "kind of irrelevant" who paid the loan because it was made on behalf of Appellant. *Id.* at 11, 15; N.T. Non-Jury Trial at 98. However, Appellant stipulated that there was no **personal** guaranty obliging Thaler to personally pay off Appellee's loan. Trial Ct. Op. at 11.

On April 14, 2021, the trial court issued an order, announcing its verdict for Appellee against Appellant in the amount of $0.00. The trial court based its decision on two grounds. First, the trial court concluded neither Appellant nor Thaler had the right to "call in" Appellee's loan before the maturity date.

- 7 -

The court reasoned the Indemnity Agreement "entitled [ ] indemnification from [Appellee **only**] if [it] defaulted on the $561,000 [l]oan with Embassy Bank **and** Embassy Bank sought payment from" Appellant. Trial Ct. Op. at 14 (emphasis added). However, the trial court found Appellant "cannot and did not prove that it incurred any costs or expenses associated" with the $561,000 loan; and a cause of action for unjust enrichment was "not available" to Appellant. *Id.* at 14, 17-18. Second, the trial court noted the Thalers and Appellant are not the same entity. Trial Ct. Op. at 15-16.

As stated above, the trial court entered judgment the same day and Appellant filed this timely appeal. On May 17, 2021, the trial court ordered, and Appellant subsequently filed, a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises three claims on appeal:

1. Did the [t]rial [c]ourt err in finding the Indemnity Agreement was not breached by [Appellee]?

2. Did the [t]rial [c]ourt err in finding [Appellant's] claim of unjust enrichment was precluded?

3. Did the [t]rial [c]ourt err in determining that [Appellant] did not suffer any actual damages?

Appellant's Brief at 5.[6]

First, Appellant argues the trial court erred in concluding it could not recover from Appellee under a breach of contract theory. Appellant's Brief at

---

[6] We have reordered Appellant's claims for ease of review.

24. Appellant avers the trial court "erred in concluding [ ] the Indemnity Agreement only applied if Embassy Bank was to take action as a result of a default by Appellee[.]" *Id.* at 25. Appellant contends "[t]he clear language of" the indemnity agreement states Appellant may recover damages related to the guaranty, mortgage, or "any amounts [Appellant] may pay in compromise or settlement of any of the foregoing." *Id.* at 24-25. Appellant insists that it, not the Thalers personally, "suffered the damages in the full amount required to satisfy the loan[.]" *Id.* at 19. We conclude no relief is due.

The relevant standard of review of a court's decision in a non-jury trial is as follows:

> [We are] limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

*Hart v. Arnold*, 884 A.2d 316, 330-31 (Pa. Super. 2005) (citation omitted).

"It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (citation

omitted). Further, "[i]t is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract[.]" ***Id.***, *citing* ***Electron Energy Corp. v. Short***, 597 A.2d 175, 177 (Pa. Super. 1991).

This Court has stated:

[T]here is a strong presumption in Pennsylvania against piercing the corporate veil. ***Wedner v. Unemployment Board***, 296 A.2d 792, 794 (1972) ("[A]ny court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception. . . . Care should be taken on all occasions to avoid making the entire theory of corporate entity[ ] useless[ ]"). Also the general rule is that **a corporation shall be regarded as an independent entity even if its stock is owned entirely by one person.**

***Advanced Tel. Sys. v. Com-Net Prof'l Mobile Radio, LLC***, 846 A.2d 1264, 1278 (Pa. Super. 2004) (emphasis added and some citations omitted).

A contract is formed when:

[T]he parties to it 1) reach a mutual understanding, 2) exchange consideration, and 3) delineate the terms of their bargain with sufficient clarity.

***Co. Image Knitware, Ltd. v. Mothers Work, Inc.***, 909 A.2d 324, 330 (Pa. Super. 2006) (citation omitted).

Preliminarily, we note Appellant's argument continues to conflate its status as a separate corporate entity with that of its sole managing member. The trial court properly found that Thaler, and Appellant are two separate entities that cannot intermix for the purposes of this litigation. ***See Advanced Tel. Sys.***, 846 A.2d at 1278; Trial Ct. Op. at 16. On appeal, Appellant ignores this clear discussion by the trial court. ***See*** Trial Ct. Op. at 16.

Appellant cannot establish a claim for breach of contract based on the indemnity agreement. We agree with the trial court's conclusions that the Indemnity Agreement "entitled [ ] indemnification from [Appellee **only**] if [it] defaulted on the $561,000 [l]oan with Embassy Bank **and** Embassy Bank sought payment from [Appellant]." Trial Ct. Op. at 14 (emphasis added). Embassy Bank never issued a notice of default to Appellee, nor did it seek satisfaction of the loan from Appellant. To the extent Appellant argues it paid a portion of Appellee's loan, it was acting outside the terms of the Indemnity Agreement and thus had no contractual right to demand repayment of the loan. *See Meyer*, 137 A.3d at 1258; *Co. Image Knitware, Ltd.*, 909 A.2d at 330. Further, the trial court found the Thalers paid the Embassy Bank loan personally. Trial Ct. Op. at 10. Thaler testified that he paid the Embassy Loan in his personal capacity and the trial court found this testimony credible. Thus, the record supports this finding. *See Hart*, 884 A.2d at 330-31. In this matter, the Thalers have not made any claim in their individual capacities to recover any payments they made on Appellee's Embassy Bank loan. *See Meyer*, 137 A.3d at 1258. Therefore, we do not disturb the trial court's finding that Appellant failed to establish a breach of the Indemnity Agreement

Next, Appellant argues the trial court erred in concluding it "does not have a basis for damages based upon the alternative theory of unjust enrichment against Appellee." Appellant's Brief at 27. Appellant contends Appellee provided no evidence suggesting Appellant "did not confer a benefit on Appellee, [and] that Appellee did not appreciate the benefit" of the loan

payment.  *Id.* at 28.  Appellant avers Appellee "entirely realized" the benefit while Appellant received no benefit in exchange.  *Id.* at 30.  Thus, Appellant insists "the entire mortgage balance was satisfied by or on behalf of Appellant for Appellee's benefit," and as such the trial court erred in concluding Appellant had no unjust enrichment claim against Appellee.

We now consider the elements of an unjust enrichment claim:

> Unjust enrichment is essentially an equitable doctrine, application of which depends on the particular factual circumstances of each individual case.  To prevail on a claim for unjust enrichment, a plaintiff must prove: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.  This Court has summarized our analysis under this doctrine as follows:
>
> > In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.  The most important factor to be considered in applying the doctrine is whether the enrichment of the defendant is unjust.  Where unjust enrichment is found, the law implies a contract, referred to as either a quasi contract or a contract implied in law, which requires that the defendant pay to plaintiff the value of the benefit conferred.
>
> > It is well-settled that "the doctrine [of unjust enrichment] does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff."

*Walter v. Magee Womens Hosp. of UPMC Health Sys.*, 876 A.2d 400, 407 (Pa. Super. 2005) (citations omitted).

We agree with the trial court's conclusion that "a cause of action for unjust enrichment is not available" to Appellant.  *See* Trial Ct. Op. at 18.  As discussed *supra*, the trial court's finding, that the Thalers personally paid the

Embassy Bank loan, is supported by the record. As such, we accept this finding as true for the purposes of this appeal. *See Hart*, 884 A.2d at 330-31.

Further, Thaler had the opportunity, during his testimony, to clarify **who** paid what portion of the Embassy Bank loan. Instead of testifying that Appellant, as an entity **separate** from the Thalers, paid the Embassy Bank loan, he stated the payment could have been made from "anywhere" and he "would have no idea" where the payment came from. *See* N.T. Non-Jury Trial, at 30-33. He continued in admitting the payment on the Embassy Bank loan was paid by "a combination of cash and another mortgage through [Thaler] **personally**." *See id.* at 31 (emphasis added).

To the extent Appellant argues Thaler and his wife are entitled to recovery for their personal payment on the Embassy Bank loan, no relief is due. The trial court properly found that while Appellee "received the benefit of having the [Embassy Bank loan] paid by a third party[,]" the Thalers are not party to this litigation, and thus unjust enrichment does not apply in the present case. *See* Trial Ct. Op. at 18. Furthermore, Appellant improperly attempts to shift the burden onto Appellee to prove it did not "appreciate" a benefit. Appellant's Brief at 28. Here Appellant provides no authority suggesting Appellee bore the burden to show it did not receive a benefit.

As we have discussed, Appellant insists upon ignoring the trial court's discussion that a corporation and its sole managing partner are separate entities. *See Advanced Tel. Sys.*, 846 A.2d at 1278. We agree with the trial

court's determination that neither Thaler nor his wife are parties to this matter and Appellant has presented "no evidence to suggest [it] has the right to pursue legal action on behalf of" the Thalers. Trial Ct. Op. at 18-19; **see Walter**, 876 A.2d at 407 (the elements of unjust enrichment include "benefits conferred on defendant **by plaintiff**.").

In its final claim, Appellant argues the trial court erred in not granting it relief "because Appellee failed to present evidence . . . that Appellant did not suffer damages." Appellant's Brief at 17. Appellee, through its representative, did not dispute it was obligated to pay the $561,000 debt to "either Embassy Bank or [Appellant]." **Id.** at 17-18. Appellant avers Appellee offered no evidence to contradict Appellant paid $206,917.33 of the Embassy loan directly to Embassy Bank and the Thaler's paid the remaining $360,000 "on behalf of Appellant[.]" **Id.** at 18. Appellant insists it was the corporation, not the Thalers, "who suffered the damages in the full amount required to satisfy the loan," and interest. **Id.** at 19.

We agree with the trial court's conclusion that Appellant had the right to recover under the indemnity agreement only if Appellee defaulted on the Embassy Bank loan and Embassy Bank sought payment. **See** Trial Ct. Op. at 14. Since Embassy Bank never sought to exercise this right, Appellant had no contractual right to demand early fulfillment of the Embassy Bank loan. As such, Appellee did not breach any agreement between the parties. Further, contrary to Appellant's argument, Appellee did not have the burden of rebutting Appellant's evidence of damages. **See Spang & Co. v. U.S. Steel**

***Corp.***, 545 A.2d 861 (Pa. 1988) (citation omitted) ("[T]he plaintiff in an action for breach of contract has the burden of proving damages resulting from the breach."). As Appellee is not liable for breach, it cannot be liable for damages. No relief is due.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/2021