J-S05042-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANDREW DAVID BERKHEIMER | : | No. 720 WDA 2022 |

Appeal from the Suppression Order Entered May 17, 2022
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0001312-2021

BEFORE: BENDER, P.J.E., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED: MAY 4, 2023**

The Commonwealth appeals from the order granting Andrew David Berkheimer's pre-trial motion to suppress. We affirm.

In June 2021, Berkheimer was charged with one count of possession with intent to deliver a controlled substance, two counts of simple possession, and 11 counts of possession of drug paraphernalia.[1] The seizure of those items resulted from a search of Berkheimer's home. Berkheimer filed an omnibus pre-trial motion to suppress the evidence obtained during the search. The trial court held an evidentiary hearing on the motion on December 7, 2021.

At the hearing, the Commonwealth presented the testimony of Lieutenant Travis Clowson of the Roaring Spring Borough Police Department. He testified that on May 22, 2021, he was working the 4:00 p.m. to midnight

---

[1] *See* 35 P.S. §§ 780-113(a)(30), (a)(16), and (a)(32), respectively.

shift. N.T., Omnibus Pretrial Motion Hearing, 12/7/21, at 7. Lieutenant Clowson stated that upon returning to the office from being on patrol shortly after 5:00 p.m., he listened to a voicemail that was left on the police department's answering machine. *Id.* at 7, 64-66. The caller identified herself as Berkheimer's neighbor. *Id.* at 66. She stated in the message that she believed someone might have broken into Berkheimer's house because the storm cellar door was ajar, and glass was broken out of a window. *Id.* at 66-67. The caller also said there was a needle in Berkheimer's yard. *Id.* at 66.

After listening to the voicemail, Lieutenant Clowson proceeded to Berkheimer's residence. *Id.* at 8. Upon arrival, he noticed that there was "a storm cellar there with a door that was off to the side and a smashed window on the door led down by a flight of steps." *Id.* at 9. Lieutenant Clowson also observed copper piping and wires at the bottom of the steps. *Id.* He testified that since the storm cellar door was ajar and the window was broken, he believed that "someone may still be in there trying to steal items." *Id.* He did not knock on the front door because he did not want to "spook" anyone who might still be in the house. *Id.* at 23. He also testified that he did not attempt to contact Berkheimer because he did not have time to search for Berkheimer's phone number. *Id.* at 24. At that point, Lieutenant Clowson called for another officer to come to the scene to assist him. *Id.* at 10. Lieutenant Clowson explained to his backup officer that there was an incident approximately one year prior where someone was in Berkheimer's house

stealing things, and he believed that the same individual might be illegally in the house again. *Id.*

Lieutenant Clowson and his backup officer then began to "clear the house." *Id.* at 11. They walked down the basement steps into the basement and then proceeded to walk up another set of basement steps that led to the first floor of the house. *Id.* at 11-12. While walking up those steps, Lieutenant Clowson observed a cardboard box in plain view on the steps containing psilocybin mushrooms. *Id.* at 12. He stated that he did not have to manipulate anything to see them. *Id.* Lieutenant Clowson testified that he did not get a search warrant at that point because he "had [to] clear the house to make sure nobody else was in the house." *Id.* at 59. The officers then opened the door from the basement into the kitchen and searched the kitchen and living room to see if anyone was there. *Id.* at 47. At that point, they announced their presence stating, "Roaring Spring Police." *Id.* They then searched the next level of the house, where the bedrooms were located. *Id.* at 54. After searching that floor, the officers went up to the attic and searched it. *Id.* at 55. The officers did not find anyone in the house or any evidence that someone had broken into the home and tried to escape. *Id.* at 59.

Lieutenant Clowson testified that after securing the residence, he applied for and was granted a search warrant. *Id.* at 13. He searched Berkheimer's home pursuant to the warrant and found a small amount of heroin and drug paraphernalia.

The trial court granted the suppression motion. The Commonwealth filed a motion for reconsideration, which was denied. This appeal followed. The Commonwealth raises the following issues:

1. Whether the lower court misapplied law to the facts in determining the law enforcement officer did not have exigent circumstances to conduct a warrantless entry into the home?

2. Whether the lower court misapplied law to the facts in placing lesser weight to a concerned citizen directly calling the police department than if they called 911?

Commonwealth's Br. at 5.

On appeal from an order granting a motion to suppress, our review is "limited to determining whether the record supported that court's factual findings and whether the legal conclusions that the suppression court drew from those facts were correct." *Commonwealth v. Torres*, 764 A.2d 532, 536-37 (Pa. 2001). We consider only "the evidence presented by the defense and so much of the evidence for the prosecution which remained uncontradicted when read in the context of the record as a whole." *Id.* at 537.

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect against unreasonable searches and seizures. "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." *Commonwealth v. Romero*, 183 A.3d 364, 396 (Pa. 2018) (citation omitted).

In its first issue raised in its Statement of Issues Involved, the Commonwealth contends the trial court erred in determining that Lieutenant Clowson "did not have exigent circumstances to conduct a warrantless entry into the home[.]" Commonwealth's Br. at 5. However, the argument section of its brief does not argue that exigent circumstances existed. In fact, they are not even mentioned. Rather, the Commonwealth argues that two other exceptions to the warrant requirement permitted a warrantless search of Berkheimer's house – the protective sweep and plain view doctrine. *See id.* at 12-18.

Pennsylvania Rule of Appellate Procedure Rule 2119 provides that the argument section of an appellate brief "shall be divided into as many parts as there are questions to be argued," and requires each section to have a "discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." *Eichman v. McKeon*, 824 A.2d 305, 319 (Pa.Super. 2003) (citations omitted). The failure to follow these instructions constitutes waiver. *Id.; see also Norman for Estate of Shearlds v. Temple Univ. Health Sys.*, 208 A.3d 1115, 1119 (Pa.Super. 2019) (holding claims waived "because they are undeveloped and lack citation to pertinent legal authority"); *McCabe v. Marywood Univ.*, 166 A.3d 1257, 1264 (Pa.Super. 2017) (finding issue waived where the appellant's "argument consists of one paragraph with no citation to authority or developed analysis").

Here, because the argument section of the Commonwealth's brief failed to develop an argument about, or even mention, its claim of exigent circumstances, that claim is waived. *See McKeon*, 824 A.2d at 319.

The Commonwealth's arguments that the protective sweep and plain view exceptions were applicable are likewise not properly preserved, as they do not appear in the Statement of Issues Involved. *See* Pa.R.A.P. 2116(a). In any event, they are meritless. First, the Commonwealth contends a warrantless protective sweep of Berkheimer's house was lawful because of the possibility that someone could have been inside the residence. Commonwealth's Br. at 16. It points out that the basement door was slightly ajar and the glass in the window was broken. *Id.* The Commonwealth maintains there was no evidence that the sweep was excessively long, and Lieutenant Clowson's body cam footage revealed that he "did not peer in every nook and cranny within the residence." *Id.* at 16-17.

The Commonwealth additionally argues that since Lieutenant Clowson was lawfully conducting a protective sweep of the residence, he could have seized the contraband at the time he saw it under the plain view doctrine. *Id.* at 17. It argues that although Lieutenant Clowson chose not to seize the items at that time, the items that were listed in the affidavit of probable cause for the warrant were the items Lieutenant Clowson observed in plain view. *Id.* The Commonwealth thus contends the items were seized pursuant to a lawful search. *Id.* at 18.

One exception to the warrant requirement is the protective sweep. ***Commonwealth v. Taylor***, 771 A.2d 1261, 1267 (Pa. 2001). A protective sweep is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." ***Id.*** (quoting ***Maryland v. Buie***, 494 U.S. 325, 327 (1990)). It is "not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." ***Buie***, 494 U.S. at 335. The sweep must "last[] no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." ***Id.*** at 335-36. This Court has interpreted ***Buie*** as approving two levels of protection:

> Pursuant to the first level of a protective sweep, without a showing of even reasonable suspicion, police officers may make cursory visual inspections of spaces immediately adjacent to the arrest scene, which could conceal an assailant. The scope of the second level permits a search for attackers further away from the place of arrest**, provided that the officer who conducted the sweep can articulate specific facts to justify a reasonable fear for the safety of himself and others**.

***Taylor***, 771 A.2d at 1267 (emphasis added).

We find that the evidence presented did not support a protective sweep. Lieutenant Clowson testified that he went into the house because he "thought someone was in the house stealing the copper piping." N.T. at 23; ***see also id.*** at 9, 11, 25, 68. He noted that "[i]ndividuals still may be up there upstairs sleeping, could be in the kitchen making something, could be in the living room, could be in an attic hiding out, could be anywhere." ***Id.*** at 52. However,

Lieutenant Clowson failed to "articulate specific facts," *see Taylor*, 771 A.2d at 1267, to justify his belief that another person, who posed a threat to his safety, might be in the home. Indeed, there were no emergent circumstances present. There was no evidence indicating that a person was unlawfully at the residence at that time or that anyone was in danger that would justify a warrantless entry into the residence. Lieutenant Clowson's reasons for entering the premises – that he believed someone might be stealing copper piping or may have been sleeping, making food, or somewhere else in the house – are not circumstances indicative of a fear for safety or the safety of others. Without any specific facts to substantiate a reasonable fear of safety, the warrantless search of the house was not justifiable as a protective sweep.

The Commonwealth's additional argument that the plain view doctrine applies is also without merit. "The plain view doctrine provides that evidence in plain view of the police can be seized without a warrant." *Commonwealth v. Luczki*, 212 A.3d 530, 546 (Pa.Super. 2019) (citation omitted). However, "inherent in the plain view doctrine is the principle the seized object must not have been put in plain view as a result of unlawful police conduct." *Commonwealth v. Heidelberg*, 267 A.3d 492, 504 (Pa.Super. 2021) (*en banc*) (citation omitted); *see also Texas v. Brown*, 460 U.S. 730, 737 (1983) (stating the "question whether property in plain view of the police may be seized [ ] must turn on the legality of the intrusion that enables them to perceive and physically seize the property in question."). Indeed, under the plain view doctrine, a warrantless seizure of an item is only permissible when:

"1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object." **Heidelberg**, 267 A.3d at 504 (citation omitted).

Here, since the search of Berkheimer's house was an unlawful protective sweep, Lieutenant Clowson did not observe the seized contraband from a lawful vantage point nor had a lawful right of access to it. **See id.** Thus, the plain view doctrine was not applicable.

In its second issue raised in its Statement of Issues Involved, the Commonwealth alleges the trial court "misapplied law to the facts in placing lesser weight to a concerned citizen directly calling the police department than if they called 911[.]" Commonwealth's Br. at 5. According to the Commonwealth, "[r]ather than relying on the training and experience of an 18-year police veteran, the court placed undue weight on the fact that the reporting neighbor called the police station rather than dialing 911." **Id.** at 20. It argues that "[w]hether an exigency existed when the police arrived to investigate must be determined by the investigating officer and must not be dictated by whether or not a concerned lay[]person called the police station rather than calling 911." **Id.** at 21.

This issue is without merit. Although the court referenced the fact that Berkheimer's neighbor called the non-emergency line instead of 911, it was just one of the many factors that the court considered in support of its grant of suppression. The court stated:

[T]here was no evidence presented to establish that the break[-]in was in progress. A neighbor contacted the police department indicating certain facts that they observed. However, they did not witness anybody in or around the residence. There was no evidence to suggest that any individual was unlawfully at the residence at that time. Therefore, there was no evidence that law enforcement was in pursuit of a fleeing felon or that the suspect would escape if not swiftly apprehended prior to a warrant being obtained. In addition, there was no proof that any evidence would be destroyed if the police took time to obtain a warrant. There was no effort at contacting the lawful owner of the residence who was believed to be out of the area. While we recognize that members of the community contacting the police department at the borough building is not uncommon in Roaring Spring, the fact that the neighbor did not contact 911 also suggests that the neighbor did not view the matter as an emergency. Simply put, there was no evidence that the situation at hand was in fact exigent.

Trial Court Opinion, filed May 17, 2022, at 7.

The record supports the court's factual findings. We agree that no exigent circumstances existed. Thus, we affirm the order granting the motion to suppress.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/4/2023

- 10 -