J-A11001-17

2017 PA Super 229

| | |
|---|---|
| DANIELLE MCCABE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MARYWOOD UNIVERSITY, | |
| Appellee | No. 1436 MDA 2016 |

Appeal from the Order Entered August 10, 2016
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 16-CV-2550

BEFORE:  SHOGAN and MOULTON, JJ., and STEVENS, P.J.E.[*]

OPINION BY SHOGAN, J.:                                        **FILED JULY 18, 2017**

Danielle McCabe ("McCabe") appeals from the order sustaining preliminary objections filed by Marywood University ("Marywood") and dismissing her claims for breach of contract, breach of good faith and fair dealing, violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), unjust enrichment, and promissory estoppel.  We affirm.

Marywood is a private university in Scranton, Lackawanna County, Pennsylvania.  It operates a department of nursing, providing academic and clinical courses in support of a Bachelor of Science Degree in Nursing ("the nursing program").  Upon graduation, nursing students take the National Council Licensure Examination ("NCLEX") in order to obtain a license to

_____

[*] Former Justice specially assigned to the Superior Court.

practice nursing. Prior to 2010, the nursing program was fully accredited by the National League for Nursing Accreditation Commission ("NLNAC"), currently known as the Accreditation Commission for Education in Nursing. Marywood underwent an NLNAC accreditation review in the spring of 2010, after which NLNAC granted it accreditation until 2018 with conditions. Marywood had two years in which to make changes to the nursing program or its NLNAC accreditation would be revoked. As of the fall of 2010, Marywood continued to represent on its website and in its printed literature that the nursing program was accredited, without defining or qualifying that status.

McCabe entered Marywood as a nursing student in August of 2011. On November 13, 2011, chair of the nursing department, Dr. Mary Alice Golden, R.N., informed current and prospective students by letter that Marywood's accreditation status with the Pennsylvania State Board of Nursing had been downgraded to "provisional" as a result of a lower passing rate on the NCLEX. Two days later, Dr. Golden issued a clarification letter, explaining that the "provisional" state nursing board status had no effect on the nursing program's NLNAC accreditation status.

In November of 2012, an NLNAC Evaluation Review Panel ("ERP") inspected Marywood for the purpose of evaluating the nursing program's accreditation status. On January 30, 2013, Marywood learned that the ERP was recommending revocation of Marywood's NLNAC accreditation. On

April 2, 2013, NLNAC notified Marywood that the nursing program's accreditation had been revoked for failing to meet certain standards and criteria. On April 10, 2013, a few weeks before McCabe's second-year final exams, Marywood informed the nursing program students that it had lost NLNAC accreditation. Marywood then timely appealed the revocation on April 22, 2013. Pursuant to NLNAC policy, Marywood's appeal restored its conditional accreditation with warning status during the pendency of the appeal. In August of 2014, the NLNAC restored the nursing program's full accreditation. Of note, had Marywood not prevailed on appeal, revocation of the nursing program's accreditation would have been retroactive to April 2, 2013.

As a result of the nursing program's conditional accreditation status, McCabe chose not to return to Marywood in the fall of 2013. Instead, she transferred to another school. On April 20, 2016, McCabe filed suit against Marywood for damages, *i.e.*, the various expenses incurred as a result of transferring schools, as well as a loss of income and employment opportunities due to her delayed graduation. Marywood filed preliminary objections on May 24, 2016, which the trial court sustained. This appeal followed. McCabe and the trial court complied with Pa.R.A.P. 1925.[1]

_____

[1] The trial court adopted its August 10, 2016 order and opinion disposing of Marywood's preliminary objections as its Pa.R.A.P. 1925(a) opinion. Order, 12/19/16.

McCabe raises the following issues for our consideration:

I.     Whether the trial court erred in finding that Ms. McCabe did not plead sufficient facts to establish a duty on Marywood to provide Ms. McCabe with an education from a fully-accredited nursing program?

II.     Whether the trial court erred in finding that Ms. McCabe did not suffer harm as a result of her reliance on fraudulent misrepresentations made by Marywood?

III.     Whether the trial court erred in finding that Marywood was not unjustly enriched by receiving tuition from Ms. McCabe despite falsely representing its accreditation status and ultimately losing its accreditation?

IV.     Whether the trial court erred in dismissing Ms. McCabe's claim for promissory estoppel when Marywood falsely represented its accreditation status and ultimately lost its accreditation?

McCabe's Brief at 4 (full capitalization omitted).

Our standard and scope of review over a trial court's decision to sustain a litigant's preliminary objections are well settled:

> Our standard of review mandates that on an appeal from an order sustaining preliminary objections which would result in the dismissal of suit, we accept as true all well-pleaded material facts set forth in the appellant's complaint and all reasonable inferences which may be drawn from those facts. This standard is equally applicable to our review of PO's in the nature of a demurrer. Where, as here, upholding sustained preliminary objections would result in the dismissal of an action, we may do so only in cases that are clear and free from doubt. To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. We review for merit and correctness—that is to say, for an abuse of discretion or an error of law. This case was dismissed at the preliminary objections stage on issues of law; our scope of review is thus plenary.

*Reardon v. Allegheny Coll.*, 926 A.2d 477, 480 (Pa. Super. 2007) (quoting

*Donahue v. Federal Express Corp.*, 753 A.2d 238, 241 (Pa. Super.

2000)).

In her first issue, McCabe argues that Marywood breached its contractual duty to provide a fully accredited nursing education. McCabe's Brief at 16–28.[2] In support of her position, McCabe relies on Marywood's website and literature as the terms of an implied contract to provide her with an opportunity to graduate from a fully accredited nursing program in exchange for the payment of tuition. Complaint, 4/20/16, at ¶ 32, 56, Exhibits C and D. Marywood responds that McCabe failed to plead the elements for breach of contract and that the nursing program was accredited by the NLNAC at all relevant times, including when McCabe *voluntarily* chose to transfer to another school. Marywood's Brief at 9–14.[3]

_____

[2] In her complaint and on appeal, McCabe also averred that Marywood breached a duty of good faith and fair dealing. Complaint, 4/20/16, at ¶¶ 68–72; McCabe's Brief at 28. We deem any issue regarding the dismissal of this claim waived for lack of citation and supporting argument. **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). Even if not waived, Pennsylvania does not recognize an independent cause of action for breach of a covenant of good faith and fair dealing. **Hanaway v. Parkesburg Grp., LP**, 132 A.3d 461, 471 (Pa. Super. 2015).

[3] We note Marywood's and the trial court's reliance on a factually similar case also decided by the Lackawanna County Court of Common Pleas and
*(Footnote Continued Next Page)*

We recognize "that the relationship between a private educational institution and an enrolled student is contractual in nature." ***Swartley v. Hoffner, Lehigh University***, 734 A.2d 915, 919 (Pa. Super. 1999). "[T]hree elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." ***412 N. Front St. Associates, LP v. Spector Gadon & Rosen, P.C.***, 151 A.3d 646, 657 (Pa. Super. 2016) (quoting ***Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.***, 137 A.3d 1247, 1258 (Pa. 2016)).

McCabe argues that "the various publications and materials produced by Marywood" contain the terms of the contract and that the term "accredited" denotes full accreditation rather than conditional or provisional.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

disposed of on preliminary objections, ***Colletti v. Marywood***, 2015-CV-1537 (Lackawanna Co. 2015). Marywood and the trial court suggest that the coordinate jurisdiction rule required the same result in this case as in the ***Colletti*** case, *i.e.*, the sustaining of Marywood's preliminary objections and the dismissal of McCabe's complaint. We disagree with this premise. The coordinate jurisdiction rule provides that "judges of coordinate jurisdiction should not overrule each other's decisions." ***Keffer v. Bob Nolan's Auto Serv.***, 59 A.3d 621, 630 (Pa. Super. 2012) (citation omitted); ***see also Mariner Chestnut Partners, L.P. v. Lenfest***, 152 A.3d 265, 282 (Pa. Super. 2016) (discussing coordinate jurisdiction rule as component of "law of the case" doctrine). Although factually similar, the case at hand and the ***Colletti*** case do not involve different judges of the Lackawanna County Court of Common Pleas sitting on the same case. Rather, they are two distinct lawsuits. Thus, the coordinate jurisdiction rule does not apply. ***Keffer***, 59 A.3d at 639.

McCabe's Brief at 17. The trial court concluded that McCabe "did not plea[d] sufficient material facts, nor cite pertinent contractual language which would establish a duty on [Marywood] to provide [McCabe] with **a fully accredited** nursing program. [Marywood's] demurrer to [McCabe's] cause of action for breach of contract is SUSTAINED." Trial Court Opinion, 8/10/16, at 3 (emphasis supplied).

Our review of the record reveals support therein for the trial court's conclusion, although we affirm on a different basis. ***See Wakeley v. M.J. Brunner, Inc.***, 147 A.3d 1, 5 (Pa. Super. 2016), *appeal denied*, 145 A.3d 728 (Pa. 2016) ("[I]t is well settled that if the court's decision is correct, we may affirm on any ground."). Marywood's publications indicate that the nursing program was accredited by the NLNAC. ***See*** McCabe's Brief at 19 (quoting language from Marywood's 2010 website and handbook; Complaint, 4/20/16, at Exhibits C and D). Accepting as true McCabe's argument that she contracted with Marywood for the opportunity to graduate from a fully accredited nursing program, Complaint, 4/20/16, at ¶ 56, we discern no breach of contract. McCabe enrolled in the nursing program in the fall of 2011. McCabe acknowledged that Marywood "was granted and it retained full accreditation status sometime in August 2014." Plaintiff's Response to Preliminary Objections, 6/13/16, at ¶ 19. Thus, Marywood was fully accredited at all relevant times and afforded McCabe the opportunity to graduate from a fully accredited nursing program and to sit for her licensure

exam upon graduation in the spring of 2015. McCabe did not aver that Marywood's conditional or temporarily-revoked accreditation status prevented her from graduating from a fully accredited nursing program or from sitting for her licensure exam. Rather, her "lawsuit is premised on speculation as to what *would* have happened *if* Marywood's nursing program lost its nursing school accreditation." Defendant's Reply Brief in Support of Its Preliminary Objections to Plaintiff's Complaint, 7/28/16, at 1 (emphases in original). The law does not permit recovery by McCabe upon the facts averred. Thus, we discern no abuse of the trial court's discretion or error of law in ruling that McCabe failed to state a claim for breach of contract.

In her second issue, McCabe argues that the trial court erred in finding she did not suffer harm as a result of relying on Marywood's false and misleading representations about the nursing program's accreditation status. McCabe's Brief at 28–36. Additionally, referring to the UTPCPL, but without identifying any specific provisions, McCabe argues that Marywood's unfair or deceptive acts and practices deceived her and made a difference in her education purchasing decision. *Id.* at 36–40. In response, Marywood claims that it did not make any material misrepresentations because it was accredited by the NLNAC at all times, and Pennsylvania does not recognize claims for something that might have occurred. Marywood's Brief at 15–18. According to Marywood, McCabe voluntarily transferred schools—despite the

fact that Marywood retained is accreditation at all relevant times—and, therefore, McCabe cannot demonstrate harm. *Id.* at 16–17.

The UTPCPL provides a private cause of action to any person who, as a result of conduct that the UTPCPL prohibits, "suffers any ascertainable loss of money or property, real or personal." 73 P.S. § 201–9.2(a). "To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004).

In disposing of this claim, the trial court opined as follows:

This [c]ourt finds that [McCabe] has not shown that she suffered harm as a result of her reliance [on] the alleged deception of Marywood University. Rather [McCabe's] harms come from her decision to transfer schools. [McCabe] claims that she was forced to transfer schools due to [Marywood's] alleged misrepresentations of its accreditation status. However, as admitted by all parties, [Marywood's] nursing program never actually lost its . . . NLNAC accreditation. [Marywood's] nursing program maintained provisional accreditation status throughout the complained of time frame and achieved full accreditation status in August of 2014. [Marywood's] Demurrer to Count III of the Complaint is SUSTAINED.

Trial Court Opinion, 8/10/16, at 4.

Upon review, we conclude that the record supports the trial court's finding that McCabe's "harms come from her decision to transfer schools." Trial Court Opinion, 8/10/16, at 4. As explained above, McCabe averred that she paid tuition for the opportunity to graduate from a fully accredited nursing program. Complaint, 4/20/16, at ¶ 56. McCabe also averred that

Marywood misrepresented its NLNAC accreditation status and that she justifiably relied on its misrepresentations. *Id.* at 75–76. However, nowhere in her complaint did McCabe aver that Marywood denied her the opportunity to graduate from a fully accredited nursing program by allegedly misrepresenting the nursing program's accreditation status. Thus, we discern no abuse of the trial court's discretion or error of law in sustaining Marywood's preliminary objections to McCabe's UTPCPL claims.

Next, McCabe argues that Marywood was unjustly enriched by her payment of tuition for a nursing program that was not fully accredited. McCabe's Brief at 40–41. Marywood counters that the nursing program was accredited at all relevant times and McCabe could have graduated from a fully accredited program if she had stayed at Marywood. Marywood's Brief at 19–20.

> To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain. The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather the most critical element of this equitable doctrine, which is whether the enrichment of the defendant is unjust. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff.

***Gutteridge v. J3 Energy Grp., Inc.***, ___ A.3d ___, 2017 PA Super 150 (Pa. Super. filed May 17, 2017) (internal quotation marks and citations omitted).

- 10 -

The trial court disposed of this issue with the following analysis:

This [c]ourt finds that [McCabe] has not adequately demonstrated that [Marywood] has been unjustly enriched. [McCabe] voluntarily chose to transfer schools and lose the academic credits she had accumulated at Marywood. [Marywood's] demurrer to Count IV of the Complaint is SUSTAINED.

Trial Court Opinion, 8/10/16, at 4.

Even accepting as true McCabe's well-pleaded material facts and all reasonable inferences which may be drawn from those facts, we agree with the trial court's conclusion. McCabe paid tuition and received academic credit for courses she enrolled in as a student in the nursing program from the fall of 2011 through the spring of 2013. McCabe fails to demonstrate how Marywood's retention of McCabe's tuition for the academic credits she earned from an accredited nursing program—credits she then lost by voluntarily transferring schools—qualifies as unjust enrichment. Thus, we conclude that the trial court did not abuse its discretion or commit an error of law in sustaining Marywood's demurrer to Count IV of McCabe's complaint.

Lastly, McCabe argues that, because Marywood promised her a fully accredited nursing program in exchange for tuition payments, it is estopped from denying liability on its promise. McCabe's Brief at 41. Marywood contends that this argument is a re-characterization of McCabe's breach-of-contract claim and, similarly, is unsupported by sufficient evidence. Marywood's Brief at 21.

- 11 -

According to the trial court:

[McCabe's] claims for damages are based on the alleged misrepresentation that the NLNAC/ACEN accreditation for [Marywood's] nursing program was revoked by the accrediting body and [McCabe] was forced to transfer school or graduate from an unaccredited program. However, [Marywood's] program never lost accreditation, and [McCabe] voluntarily chose to transfer. Accordingly [Marywood's] demurrer to Count V is SUSTAINED.

Trial Court Opinion, 8/10/16, at 5.

We conclude that McCabe has waived this issue. In violation of Pa.R.A.P. 2119(a), her argument consists of one paragraph with no citation to authority or developed analysis.[4]

In conclusion, we discern no basis on which to disturb the trial court's rulings. Thus, we affirm the order sustaining Marywood's preliminary objections and dismissing McCabe's complaint.

Order affirmed.

_____

[4] Even if not waived, this claim does not warrant relief. The record supports the trial court's findings, and its legal conclusion is without error. Marywood advertised that the nursing program was accredited. Not unreasonably, McCabe assumed the nursing program was fully accredited. Upon learning that the nursing program's accreditation status had been revoked, albeit temporarily, McCabe chose to transfer schools, thereby incurring financial and educational damages. McCabe did not aver that Marywood's NLNAC accreditation status prevented her from receiving a fully accredited education or graduating from a fully accredited program. On this record, we would conclude that the trial court did not err in sustaining Marywood's demurrer and dismissing McCabe's promissory estoppel claim.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/18/2017</u>