**[J-47-2025]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| KRISTIN ALLYN WEATHERHOLTZ, | : | No. 57 MAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court at No. 190 MDA |
| | : | 2023 dated October 25, 2023, |
| v. | : | Reversing the order of the Lebanon |
| | : | County Court of Common Pleas, |
| | : | Civil Division, at No. 2018-40012 |
| DYLAN JACOB MCKELVEY, | : | dated January 17, 2023 |
| | : | |
| Appellee | : | ARGUED: May 30, 2025 |

**OPINION**

JUSTICE DONOHUE                                    DECIDED: December 16, 2025

The Protection of Victims of Sexual Violence or Intimidation Act, 42 Pa.C.S. §§ 62A01-62A20 ("the Act"), permits victims of sexual violence or intimidation to seek an order protecting them from the perpetrator of the sexual abuse. In this case we are asked to determine when the six-year statute of limitations applicable to such petitions for protective orders begins to run. Consistent with our ordinary principles governing statutes of limitations, we hold that the limitation period begins to run from the date of the act or circumstance that demonstrates that a plaintiff, or appropriate individual, is at a continued risk of harm from the defendant, as this is the moment an action accrues. Therefore, we reverse the judgment of the Superior Court and remand for further proceedings.

**I. Background**

In passing the Act, the General Assembly declared that "[s]exual violence is the most heinous crime against a person other than murder." 42 Pa.C.S. § 62A02(1). To

protect "victims of sexual violence[1] or intimidation,"[2] *id*. § 62A03, the Act provides victims with a civil remedy to seek an order of court prohibiting the defendant from having any contact with the victim and granting any other appropriate relief. *Id.* § 62A07(b). The Act sets forth the basis and procedure for obtaining relief under the Act, in pertinent part, as follows:

---

[1] The Act defines "sexual violence" as:

> Conduct constituting a crime under any of the following provisions between persons who are not family or household members:
>
> 18 Pa.C.S. Ch. 31 (relating to sexual offenses), except 18 Pa.C.S. §§ 3129 (relating to sexual intercourse with animal) and 3130 (relating to conduct relating to sex offenders).
>
> 18 Pa.C.S. § 4304 (relating to endangering welfare of children) if the offense involved sexual contact with the victim.
>
> 18 Pa.C.S. § 6301(a)(1)(ii) (relating to corruption of minors).
>
> 18 Pa.C.S. § 6312(b) (relating to sexual abuse of children).
>
> 18 Pa.C.S. § 6318 (relating to unlawful contact with minor).
>
> 18 Pa.C.S. § 6320 (relating to sexual exploitation of children).

42 Pa.C.S. § 62A03.

[2] The Act defines "intimidation" as:

> Conduct constituting a crime under either of the following provisions between persons who are not family or household members:
>
> 18 Pa.C.S. § 2709(a)(4), (5), (6) or (7) (relating to harassment) where the conduct is committed by a person 18 years of age or older against a person under 18 years of age.
>
> 18 Pa.C.S. § 2709.1 (relating to stalking) where the conduct is committed by a person 18 years of age or older against a person under 18 years of age.

42 Pa.C.S. § 62A03.

## § 62A05.  Commencement of proceedings.

**(a)  General rule.--**An adult or emancipated minor may seek relief under this chapter for that person or any parent, adult household member or guardian ad litem may seek relief under this chapter on behalf of a minor child, or the guardian of the person of an adult who has been declared incapacitated under 20 Pa.C.S. Ch. 55 (relating to incapacitated persons) may seek relief on behalf of an incapacitated adult, by filing a petition with the court alleging the need for protection from the defendant with respect to sexual violence or intimidation.

\* \* \*

## § 62A06.  Hearings.

**(a)  General rule.--**Within ten business days of the filing of a petition under this chapter, a hearing shall be held before the court where the plaintiff must:

(1)  assert that the plaintiff or another individual, as appropriate, is a victim of sexual violence or intimidation committed by the defendant; and

(2)  prove by preponderance of the evidence that the plaintiff or another individual, as appropriate, is at a continued risk of harm from the defendant.

\* \* \*

## § 62A07.  Relief.

**(a)  Order or consent agreement.--**The court may issue an order or approve a consent agreement to protect the plaintiff or another individual, as appropriate, from the defendant.

**(b)  General rule.--**An order or a consent agreement may include:

(1)  Prohibiting the defendant from having any contact with the victim, including, but not limited to, restraining the defendant from entering the victim's residence, place of employment, business or school. This may include prohibiting indirect contact through third parties and also prohibiting direct or indirect contact with other designated persons.

(2)  Granting any other appropriate relief sought by the plaintiff.

**(c) Duration and amendment of order or agreement.**--A protection order or an approved consent agreement shall be for a fixed period of time not to exceed 36 months. The court may amend its order or agreement at any time upon subsequent petition filed by either party.

42 Pa.C.S. §§ 62A05(a), 62A06(a), 62A07(a)-(c).

In this case, Appellee, Dylan Jacob McKelvey ("McKelvey"), sexually abused Appellant, Kristin Allyn Weatherholtz ("Weatherholtz"), in 2009 or 2010 when she was fourteen years old.[3]  N.T., 1/13/2023, at 6-7.  On January 12, 2018, Weatherholtz filed her first petition for a protective order under the Act after she learned that McKelvey attempted to locate her address, contact her through mutual friends, and break up her marriage.  Trial Court Opinion, 3/31/2023, at 2.  The court granted the petition and issued a protective order prohibiting McKelvey from having any contact with Weatherholtz for three years.  The order expired on January 18, 2021.

On June 6, 2022, Weatherholtz was at a flea market with her family when she encountered McKelvey, prompting her to file a second petition for a protective order on August 31, 2022.  The same day, the trial court granted a temporary sexual violence protective order.[4]  On November 28, 2022, McKelvey filed a motion to vacate the

---

[3]  The specific details of the sexual abuse are not set forth in the record, and they are ultimately not relevant to this appeal.  However, the trial court explained that McKelvey pled guilty to the following crimes: sexual abuse of children, criminal solicitation to commit sexual abuse of children, unlawful contact with a minor, obscene and other sexual materials and performances, corruption of minors, and criminal solicitation to commit corruption of minors.  Trial Court Opinion, 3/31/2023, at 1 (citing 18 Pa.C.S. §§ 6312(b), 902(a) (in reference to § 6312(b)), 6318(a)(5), 5903(c), 6301(a)(1), 902(a) (in reference to § 6301(a)(1))).

[4]  Regarding temporary protective orders, the Act provides:

**(b) Temporary orders.**--If a plaintiff seeks a temporary order for protection from an immediate and present danger, the court shall conduct an ex parte proceeding. The court may enter a temporary order as it deems necessary to protect the plaintiff or another individual, as appropriate, when it finds the

(continued…)

temporary sexual violence protective order and dismiss Weatherholtz's petition on the basis that the petition was barred by the six-year statute of limitations, which began running at the time of the initial sexual assault in 2009. *See* McKelvey's Motion to Vacate and Dismiss, 11/28/2022, ¶¶ 6-9 (citing *K.N.B. v. M.D.*, 259 A.3d 341, 350 (Pa. 2021) (determining that petitions under the Act are subject to the six-year catch-all statute of limitations set forth at 42 Pa.C.S. § 5527(b))).

On January 13, 2023,[5] the trial court held a hearing on the petition where both parties testified. Weatherholtz first testified that McKelvey sexually abused her in 2009 or 2010. N.T., 1/13/2023, at 6-7. She stated that on June 6, 2022, she was with her family setting up a stand at a flea market when McKelvey walked within twenty feet of her, made eye contact for a few seconds, smiled, waved, and then "bolted away." *Id*. at 7-8. She conveyed that this interaction "made [her] afraid" and caused her to check her surroundings going forward. *Id*. at 7. She also explained that prior to the interaction at the flea market, McKelvey tried to contact her on numerous occasions. *Id.* at 9-11. After the encounter at the flea market, Weatherholtz testified that she "definitely had more fear and anxiety" as she described being "very skeptical about going anywhere" and "would [not] go anywhere without someone with [her]." *Id*. at 12. For his part, McKelvey testified that on June 6, 2022, he was at the flea market with his friend and sister to visit another

plaintiff or another individual is in immediate and present danger from the defendant. The temporary order shall remain in effect until modified or terminated by the court after notice and hearing.

42 Pa.C.S. § 62A06(b).

[5] The hearing was initially scheduled for September 9, 2022, pursuant to the Act's requirement that a hearing be conducted "[w]ithin ten business days of the filing of a petition under this chapter[.]" 42 Pa.C.S. § 62A06(a). However, for various reasons, the hearing was continued numerous times.

friend.[6]  *Id*. at 14.  McKelvey stated that he did not see Weatherholtz at the flea market and maintained that he was talking to his friend the entire time he was there.  *Id*. at 14-15.

At the conclusion of the hearing, the trial court granted Weatherholtz's petition and entered a final protective order against McKelvey, effective until January 13, 2026.[7]  On January 19, 2023, McKelvey filed a motion for post-trial relief reiterating that Weatherholtz's action was barred by the statute of limitations and that Weatherholtz "failed to provide sufficient evidence that [McKelvey] engaged in one or more acts that demonstrate a continued risk of harm to [Weatherholtz]."  McKelvey's Motion for Post-Trial Relief, 1/19/2023, ¶¶ 17, 20.  On January 26, 2023, the trial court denied McKelvey's motion.  The court first noted that pursuant to Pennsylvania Rule of Civil Procedure 1957(b), no post-trial motions may be filed after a final order is entered under the Act.

---

[6]  McKelvey testified remotely as he was incarcerated for a parole violation due to his alleged contact with Weatherholtz at the flea market on June 6, 2022.  N.T., 1/13/2023, at 19.

[7]  Specifically, the order provided:

> 1. [McKelvey] shall not abuse, stalk, harass, threaten or attempt to use physical force that would reasonably be expected to cause bodily injury to [Weatherholtz] or any other protected person in any place where they might be found.
>
> 2. [McKelvey] is prohibited from having **ANY CONTACT** with [Weatherholtz], either directly or indirectly, or any other person protected under this order, at any location, including but not limited to any contact at [Weatherholtz's] school, business, or place of employment.
>
> 3. [McKelvey] shall not contact [Weatherholtz], or any other person protected under this order, by telephone or by any other means, including through third persons.

Final Sexual Violence Protective Order, 1/13/2023, at 2 (emphasis in order).

Trial Court Order, 1/26/2023, ¶ 1 (citing Pa.R.C.P. 1957(b)). Additionally, the court rejected McKelvey's statute of limitations argument, reasoning that "[Weatherholtz's] right to relief under the [Act] arose when [McKelvey] committed the acts of harassment and/or intimidation on or about June 6, 2022." *Id.* ¶ 13.

McKelvey filed a notice of appeal and raised six claims of error.[8] In its Pa.R.A.P. 1925(a) opinion, the trial court first observed that claims under the Act are subject to a

---

[8] Specifically, McKelvey asserted:

1. The trial court erred by denying [McKelvey's] [m]otion to [d]ismiss that cited the six-year statute of limitations applicable to the [Act].

2. The trial court erred by holding that the statute of limitations for the [Act] does not begin to run from the date of the act of sexual violence or intimidation committed by [McKelvey], but rather from the date of the act or circumstance that demonstrates a continued risk of harm to the victim?

3. The trial court erred by holding that [McKelvey's] right to relief under the [Act] arose when [McKelvey] committed an act of harassment and/or intimidation on or about June 6, 2022, despite the fact that the underlying act of sexual violence or intimidation occurred more than six years prior to the filing of the petition?

4. The trial court erred by finding that [McKelvey's] alleged action of smiling at [Weatherholtz] and waving constituted an act of harassment and/or intimidation that was sufficient to trigger a right to relief under the Act?

5. The trial court erred in granting [Weatherholtz's] request for a protective order under the [Act] despite [Weatherholtz's] failure to provide evidence that she was a victim of sexual violence or intimidation of the type specifically enumerated in the definitions of those terms in 42 Pa.C.S. § 62A03.

6. The trial court erred by improperly granting an extension of the prior protective order that expired over a year and a half prior to the petition for relief.

McKelvey's Concise Statement of Errors Complained of on Appeal, 2/23/2023, ¶¶ 1-6.

six-year statute of limitations. Trial Court Opinion, 3/31/2023, at 6 (citing *K.N.B.*, 259 A.3d at 341). The court also noted that a statute of limitations does not begin to run until a cause of action has accrued. *Id*. at 6-7 (citing *Erie Ins. Exch. v. Bristol*, 174 A.3d 578 (Pa. 2017)). The court reasoned that "[Weatherholtz] did not have a cause of action under the [Act] until [McKelvey's] conduct on [June 6, 2022] caused her emotional distress and fear and placed her at a continued risk of harm."[9] *Id*. at 7. Therefore, the court concluded that Weatherholtz's petition filed in August 2022 was not barred by the six-year statute of limitations. *Id*. at 9.

A three-judge panel of the Superior Court reversed, agreeing with McKelvey that the statute of limitations began running at the time of the initial sexual assault in 2009 or 2010. *Weatherholtz v. McKelvey*, 305 A.3d 103 (Pa. Super. 2023). The court first observed that a statute of limitations begins to run when a claim accrues, which typically occurs when an injury is inflicted. *Id*. at 106 (citing *Kornfeind v. New Werner Holding Co*., 280 A.3d 918, 928 (Pa. 2022); *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 246-47 (Pa. 2021)). The court explained that to make out a successful claim under the Act, a plaintiff must "'(1) assert that the plaintiff or another individual, as appropriate, is a victim of sexual violence or intimidation committed by the defendant; and (2) prove by preponderance of the evidence that the plaintiff or another individual, as appropriate, is at a continued risk of harm from the defendant.'" *Id.* at 108 (quoting *E.A.M. v. A.M.D. III*, 173 A.3d 313, 319 (Pa. Super. 2017) (quoting 42 Pa.C.S. § 62A06(a))). To address McKelvey's claim of error, the court set out to determine which of the two elements "is the pertinent prong for determining when the cause of action accrues[.]" *Id*.

---

[9] The trial court acknowledged that in its January 23, 2023 Order, it incorrectly concluded that McKelvey's actions at the flea market constituted "acts of intimidation/harassment." Trial Court Opinion, 3/31/2023, at 8; *see* supra p. 7.

While observing that this was an issue of first impression, the court reasoned that our decision in *K.N.B.* controlled. *Id*. at 109. In *K.N.B.*, the defendant sexually assaulted the victim in 2015, but the victim did not seek a protective order under the Act until she encountered the defendant at a Walmart in 2018. The defendant in *K.N.B.* argued that the victim's claim under the Act was subject to a two-year statute of limitations, and thus time-barred because it was filed beyond two years from the date of the initial sexual assault. We disagreed and held that petitions seeking a protective order under the Act are subject to the six-year catch-all statute of limitations. *See K.N.B.*, 259 A.3d at 350 (citing 42 Pa.C.S. § 5527(b)).[10] Notably, the victim in *K.N.B.* did not contest the defendant's underlying premise that the statute of limitations started running at the time of the initial sexual assault.

However, according to the Superior Court, our holding in *K.N.B.* "implies that the statute [of limitations] began to run at the time of the underlying sexual violence or intimidation" because "we did not identify a starting date different from the initial sexual assault." *Weatherholtz*, 305 A.3d at 109. The Superior Court further reasoned that "if the claim did not accrue until [the victim in] *K.N.B.* encountered the defendant at a Walmart in 2018, then the applicability of a two-year versus six-year statute of limitations would have been of no moment as the claim would not have been barred under either limitation period." *Id.* For these reasons, the Superior Court concluded that the *K.N.B.* Court implied that a claim under the Act accrues when the underlying act of sexual violence or intimidation occurs. *Id.*

---

[10] Section 5527(b) provides that "[a]ny civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years." 42 Pa.C.S. § 5527(b).

Turning to the facts of this case, the court explained that the only conduct that amounted to sexual violence occurred in 2009 or 2010. *Weatherholtz*, 305 A.3d at 110. The court found that McKelvey's conduct at the flea market in 2022 did not rise to the level of sexual violence, and although Weatherholtz may have been intimidated from this interaction, "[McKelvey's] conduct could not have constituted intimidation as defined by the [Act] because [Weatherholtz] was not under eighteen years of age."[11] *Id.* The court concluded that Weatherholtz's 2022 petition was time-barred because it was filed after the six-year statute of limitations had expired.

In closing, the court also addressed Weatherholtz's argument that if the statute of limitations started with the act of sexual violence, it would make the Act useless in circumstances where the defendant is incarcerated for at least six years. *Id.* The court rejected this argument, reasoning as follows:

> Plaintiffs may pursue criminal charges against a defendant and a defendant may be ordered to have no contact with the victim as part of a sentence, as was apparently the case here. Simultaneously, or within six years, a plaintiff may also seek a protective order under the [Act]. If a defendant is in jail at the time, the plaintiff need not prove an act demonstrating a continued risk of harm to obtain a protective order or an extension of an existing order. *See* 42 Pa.C.S. § 62A07(f). After obtaining the initial protective order, a plaintiff may seek an unlimited number of extensions so long as the court "finds that the extension is necessary because the defendant engaged in one or more acts or **finds some other circumstances that, in the discretion of the court, demonstrate a continued risk of harm to the victim**." 42 Pa.C.S. § 62A07(d)(1)(i). Thus, while the [Act's] protections may not be as broad as [Weatherholtz] would like, they still offer significant protection to victims whose offenders serve

---

[11] The court explained that "intimidation" is defined under the Act as specific crimes committed against a victim who is under the age of eighteen. *Weatherholtz*, 305 A.3d at 110. Because Weatherholtz filed the petition in 2022—more than eight years after she turned eighteen—the court reasoned that no act of intimidation could have occurred within the six-year statute of limitations. *Id.*

> jail time or continue to pose a risk of harm for an extended
> period of time.

*Weatherholtz*, 305 A.3d at 110 (emphasis in Superior Court Opinion) (footnote omitted). Therefore, the court reversed the trial court's decision and dismissed the petition with prejudice.[12] *Id*.

We granted allowance of appeal to decide the following issue presented by Weatherholtz:

> Did the Superior Court err by holding that the statute of limitations for the [Protection of Victims of Sexual Violence of Intimidation Act, 42 Pa.C.S. §§ 62A01- 62A20,] begins to run from the date of the act of sexual violence or intimidation committed by [McKelvey], instead of from the date of the act or circumstance that demonstrated a continued risk of harm to the victim?

*Weatherholtz v. McKelvey*, 323 A.3d 585, 586 (Pa. 2024) (per curiam).

## II. Parties' Arguments

**Weatherholtz's Arguments**

Weatherholtz's central argument is that a statute of limitations begins to run when a cause of action accrues, which does not occur until a plaintiff is able to "first maintain[] the action to a successful conclusion." Weatherholtz's Brief at 17 (internal quotation and citation omitted). Accordingly, here, she argues that the statute of limitations for an action under the Act does not begin to run until a plaintiff can "[1] assert that they are a victim of sexual violence committed by the defendant **and** '[2] prove by preponderance of the evidence that the plaintiff … is at continued risk of harm from the defendant.'" *Id*. (quoting 42 Pa.C.S. § 62A06(a)(2) (emphasis in Weatherholtz's Brief)). As the Act contains two separate elements, Weatherholtz suggests that a cause of action does not accrue until a

---

[12] Given its disposition in favor of McKelvey, the Superior Court did not address McKelvey's remaining claims of error. *Weatherholtz*, 305 A.3d at 110; *see* supra p. 7 n.8 (referencing McKelvey's additional claims of error).

plaintiff can prove that they are at a continued risk of harm from the defendant. Therefore, she stresses that this second element is the triggering event to start the statute of limitations as it will necessarily occur after the underlying sexual violence or intimidation. *Id*. at 18.

While recognizing the general rule that "'a cause of action accrues when an injury is inflicted[,]'" *id*. (quoting *Rice*, 255 A.3d at 246-47), Weatherholtz contends that there is a distinction between "an injury and a legal injury." Weatherholtz's Brief at 19. To Weatherholtz, a legal injury does not occur under the Act until the plaintiff can establish all the elements of a claim, which often does not occur at the same time of the initial sexual violence. *Id*. at 19-20. She argues that there is no basis to conclude that both elements must occur simultaneously because the General Assembly provided "two distinct elements and no temporal requirements for meeting those two elements." *Id*. at 21. For example, Weatherholtz explains that the statute of limitations for a breach of contract action does not run from the breach, but rather from the existence of damages, a distinct element of the cause of action. *Id*. at 21-22 (citing *McCabe v. Marywood Univ*., 166 A.3d 1257 (Pa. Super. 2017)).

Weatherholtz next argues that the Superior Court's interpretation runs contrary to the Act's purpose, which is "to protect sexual assault victims from having future contact with their offenders to prevent further anxiety and fear, which often results in victims reliving their trauma." Weatherholtz's Brief at 28-29 (citing 42 Pa.C.S. § 62A02). Given the reality that many offenders are incarcerated for at least six years after the underlying act of sexual violence, Weatherholtz contends that the Act would be "completely ineffective in most cases" if the statute of limitations started running from the act of sexual violence. *Id*. at 26.

Weatherholtz next argues that the Superior Court misinterpreted our limited holding in *K.N.B.* because the issue of when the statute of limitations runs for claims under the Act was not before the Court. Weatherholtz's Brief at 34-35. According to Weatherholtz, the *K.N.B.* Court only decided "which statute of limitation[s] applied to the [Act]," leaving for another day "which criteria … or which prong triggered" the statute of limitations. *Id.* at 36.

Lastly, Weatherholtz argues that the statute of limitations cannot attach to the act of sexual violence or intimidation because a plaintiff has no burden to prove the act of sexual violence or intimidation. Weatherholtz's Brief at 36-38 (citing *K.N.B.*, 259 A.3d at 352 (Saylor, J., concurring)). She explains that the Act only requires a plaintiff to "assert that the plaintiff or another individual, as appropriate, is the victim of sexual violence or intimidation committed by the defendant[.]" 42 Pa.C.S. § 62A06(a). As an assertion is only a "'declaration or allegation[,]'" Weatherholtz contends that she did not have a burden to prove the first element. Weatherholtz's Brief at 37 (quoting *Assertion*, BLACK'S LAW DICTIONARY 1251 (8th ed. 2004)). Weatherholtz argues that the "statute of limitations cannot start running before there is a burden of proof on a plaintiff to prove a case." *Id.* at 38.

**McKelvey's Arguments**

McKelvey argues that the six-year statute of limitations starts to run from the date of the act of sexual violence or intimidation. McKelvey's Brief at 7. Like the Superior Court, McKelvey relies on *K.N.B.*, arguing that "[i]t [wa]s implicit … that both the parties and the [*K.N.B.*] Court" understood that the act of sexual violence triggers the statute of limitations. *Id.*

McKelvey also points to Section 62A07(d) of the Act, which allows for extensions of protective orders where the court "'finds some other circumstances that, in the

discretion of the court, demonstrate a continued risk of harm to the victim.'" *Id*. (quoting 42 Pa.C.S. § 62A07(d)). McKelvey claims that the extension mechanism provided for in Section 62A07(d) would be surplusage if Weatherholtz is correct that the continued risk of harm element triggers the six-year statute of limitations. *Id.* at 9. According to McKelvey, "[t]here would be no need to extend an existing order if a new order could be obtained any time that the [continued risk of harm] element is met." *Id*. McKelvey maintains that Weatherholtz's construction would violate the Statutory Construction Act, which provides that "'[e]very statute shall be construed, if possible, to give effect to all its provisions.'" *Id*. (quoting 1 Pa.C.S. § 1921(a)).

More generally, McKelvey posits that a cause of action typically accrues "'when an injury is inflicted.'" McKelvey's Brief at 9-10 (quoting *Rice*, 255 A.3d at 254). For claims under the Act, he argues that an injury is inflicted when an act of sexual violence or intimidation occurs. McKelvey also emphasizes that the Act contains specified "guardrails" that limit a protective order to a period of three years, define a procedure to seek extensions, and provide a limited window to obtain an order when an incarcerated defendant will be released from custody. *Id*. at 11-12 (citing 42 Pa.C.S. § 62A07(c), (d), (f)).[13] Given these statutory guardrails, he concludes that the General Assembly did not intend to "create an unlimited, unending right to a protecti[ve] order[.]" *Id*. at 11.

---

[13] Section 62A07(f) provides:

> **(f) Incarceration.--**When the defendant is or was incarcerated and will be released from custody in the next 90 days or has been released from custody within the past 90 days, a plaintiff does not need to show that the defendant engaged in one or more acts that indicate a continued risk of harm to the victim in order to obtain an extension or a subsequent protection order under this chapter.

42 Pa.C.S. § 62A07(f).

Under Weatherholtz's approach, McKelvey contends that the six-year limitation period would be "essentially meaningless" because a victim of an incident that occurred decades earlier may "have a sudden memory" of the incident and be granted a protective order "merely by presenting testimony from … a psychiatrist who posits that the plaintiff is suffering from ongoing mental harm." McKelvey's Brief at 13. McKelvey also cautions that a protective order is more than a "mere annoyance or inconvenience for a defendant." *Id.* McKelvey explains that he was incarcerated as a result of the protective order and also highlights that other defendants "may lose their right to own firearms, their employment, [and] their freedom to attend their long-time place of worship[.]" *Id*.

Finally, McKelvey notes that he committed the underlying sexual violence in this case prior to the Act's passage in 2015. *Id*. at 14. Given that "'[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly[,]'" *id*. (quoting 1 Pa.C.S. §1926), McKelvey argues that the Act cannot be retroactively applied to his conduct occurring prior to 2015.

**Weatherholtz's Reply**

Weatherholtz first responds to McKelvey's argument that starting the statute of limitations with the occurrence of a continued risk of harm would make the provisions of the Act allowing for extensions obsolete. Weatherholtz's Reply Brief at 4. Weatherholtz stresses that there are circumstances where a protective order expires and there is no need to seek an extension because the defendant has not done anything to cause a continued risk of harm. *Id*. She argues that to require a victim to seek an extension when there is no proof of a continued risk of harm would be absurd. *Id*. at 5. Moreover, because seeking an extension requires the victim to serve the defendant and see the defendant at the initial hearing, Weatherholtz argues that this would increase the likelihood that the defendant would start engaging in harassing or threatening behavior. *Id*. at 5-6.

Weatherholtz also argues that McKelvey waived his claim that the Act does not apply retroactively for failing to raise this claim in the lower courts. *Id*. at 6-7. In the event McKelvey did not waive his retroactivity argument, Weatherholtz suggests that the Act is a remedial in nature in providing protection to victims of past sexual violence or intimidation. *Id.* at 9. She argues that there is no retroactivity issue because the Act "does not impair any contractual rights between victims and offenders and does not disturb any vested right by an offender[.]" *Id.*

**Amici**

In support of Weatherholtz, Pennsylvania Coalition to Advance Respect, Partnered Pennsylvania Rape Crisis Centers, and Commonwealth of Pennsylvania Office of Victim Advocate ("Amici") submitted a joint amici brief. Amici highlight the prevalence of sexual violence and the long-term trauma it entails to support their argument that the statute of limitations begins running when the victim is at a continued risk of harm from the defendant. Amici Brief at 3-10. Amici also provide various examples where victims of sexual violence did not report the abuse when it occurred, only to encounter the perpetrator of the abuse many years later.[14] *Id*. at 14-15. According to Amici, the harm

---

[14] Specifically, Amici provide the following examples:

> (1) A woman was sexually abused as a child by her best friend's father when she was age [ten]. The abuse was never disclosed. The friend's family moves away. Years later as adults, the victim runs into her childhood best friend and the two reconnect. A month later, the abuser sends a Facebook friend request to the victim. The victim is shocked, and her childhood trauma is reignited. She wants no contact with the offender.

> (2) A man was sexually abused by a teammate during a hazing incident while a member of a college lacrosse team. He quit the team, and the abuse was never disclosed. Years later, his abuser apparently lives in the same area and approaches the victim and his wife while they are out at a

(continued…)

that arises in these examples "is directly related to the timing of the re-traumatization and not the date that the sexual abuse or intimidation occurred." *Id*. at 15. To support this reasoning, Amici point to *K.N.B.* where we noted that "'apprehension, fear, and emotional distress' is sufficient evidence to demonstrate a continued risk of harm under the [Act]." *Id*. at 16 (quoting *K.N.B.*, 259 A.3d at 351 (quoting *E.A.M.*, 173 A.3d at 321)).

### III. Analysis

To determine when the six-year statute of limitations begins to run for actions brought pursuant to the Act, we begin with the statutory text. "Whether the statute of limitations has run on a claim is a question of law[.]" *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005). Accordingly, our standard of review is de novo and our scope of review is plenary. *Erie Ins. Exch.*, 174 A.3d at 585 n.13. The Act creates a civil remedy for victims of sexual violence or intimidation by authorizing courts to "issue an order or approve a consent agreement to protect the plaintiff or another individual, as appropriate, from the defendant." 42 Pa.C.S. § 62A07(a). To obtain a protective order under the Act, the victim, or interested adult/guardian, must "fil[e] a petition with the court alleging the need for protection from the defendant with respect to sexual violence or intimidation." 42 Pa.C.S. § 62A05(a). After the filing of a petition, the Act provides:

---

restaurant. The abuser smirks and asks about organizing a team reunion. The victim is deeply upset and does not want his abuser to approach him again.

(3) A college student is sexually assaulted by another student. She leaves college and enrolls elsewhere. The crime was never reported. Years later, the perpetrator is hired at the same company where the victim is employed. He approaches her in the parking lot after work to say "hi." She experiences an overwhelming wave of fear and anxiety and does not want him to communicate with her again.

Amici Brief at 14-15.

**(a) General rule.**--Within ten business days of the filing of a petition under this chapter, a hearing shall be held before the court where the plaintiff must:

(1) assert that the plaintiff or another individual, as appropriate, is a victim of sexual violence or intimidation committed by the defendant; and

(2) prove by preponderance of the evidence that the plaintiff or another individual, as appropriate, is at a continued risk of harm from the defendant.

42 Pa.C.S. § 62A06(a)(1)-(2).  The two provisions of Section 62A06(a)(1)-(2) form the elements of an action under the Act.  *See K.N.B.*, 259 A.3d at 344 ("To establish a right to relief under the [Act], a plaintiff must [satisfy the provisions of Section 62A06(a)(1)-(2)].").

With this statutory framework in mind, we turn to the general principles of statutes of limitations.  A statute of limitations creates a time limit for bringing a legal action.  *Nicole B. v. Sch. Dist. of Phila.*, 237 A.3d 986, 993-94 (Pa. 2020).  The primary purpose is "to expedite litigation and thus discourage delay and the presentation of stale claims which may greatly prejudice the defense of such claims."  *Rice*, 255 A.3d at 255 (citation omitted).  The Judicial Code provides, as a general rule, that "[t]he time within which a matter must be commenced under this chapter shall be computed … from the time the cause of action accrued[.]"  42 Pa.C.S. § 5502(a).  A cause of action accrues "when the plaintiff could have first maintained the action to a successful conclusion" which occurs "as soon as the right to institute and maintain a suit arises."  *Fine*, 870 A.2d at 857.  In contrast, where a plaintiff is unable to satisfy all the elements of a cause of action, there is no right to institute and maintain a suit.  With no right to maintain a suit, no cause of action accrues, and the statute of limitations does not begin to run.

In this case, the Superior Court reasoned that our decision in *K.N.B.* "implie[d] that the statute [of limitations] began to run at the time of the underlying sexual violence or

intimidation." *Weatherholtz*, 305 A.3d at 109. This characterization of *K.N.B.* is simply incorrect. In *K.N.B.*, we granted allowance of appeal to answer two questions:

> (1) In a case of first impression, whether an action under the [Act] is governed by the six-year catch-all statute of limitations, as the Superior Court held, rather than the civil two-year statute of limitations applicable to torts?

> (2) In a case of first impression, whether the continuing risk of harm required for a protection order under the [Act] must be reasonable and not solely the plaintiff's subjective and unfounded fear of the [Petitioner]?

*K.N.B. v. M.D.*, 239 A.3d 14 (Pa. 2020) (per curiam). The defendant in *K.N.B.* argued that the victim's petition—filed twenty-nine months after the act of sexual violence—was untimely because it was not filed within two years of the act of sexual violence. Importantly, the victim in *K.N.B.* never challenged the defendant's contention that the statute of limitations began to run on the date of the alleged act of sexual violence. As the parties in *K.N.B.* did not dispute that the statute of limitations began to run from the initial act of sexual violence or intimidation, we had no basis to address this distinct issue. However, our silence on this point in *K.N.B.* does not give rise to the implication that the statute of limitations begins running at the time of the sexual violence or intimidation. We did not identify the date the statute of limitations began to run in *K.N.B.* because we were not asked to. Rather, we resolved the distinct legal issue of whether a claim under the Act is subject to the six-year statute of limitations or two-year statute of limitations. We now resolve the distinct legal issue of when the six-year statute of limitations begins to run.

The first element under the Act only requires the plaintiff to "**assert** that the plaintiff or another individual, as appropriate, is a victim of sexual violence or intimidation committed by the defendant," while the second element requires the plaintiff to "**prove** by preponderance of the evidence that the plaintiff or another individual, as appropriate, is

at a continued risk of harm from the defendant." 42 Pa.C.S. § 62A06(a)(1)-(2) (emphasis added). We explained in *K.N.B.* that the second element "requires only what it says: the plaintiff must prove that he or she (or another individual) is 'at a continued risk of harm from the defendant.'" *K.N.B.*, 259 A.3d at 350 (quoting 42 Pa.C.S. § 62A06(a)(2)). The *K.N.B.* Court rejected the defendant's argument that the continued risk of harm element "require[s] trial courts to evaluate the reasonableness of the plaintiff's mental and emotional reaction when she encounters the defendant." *Id*. at 352. Instead, the *K.N.B.* Court explained that the continued risk of harm element can be satisfied based on the victim's subjective fear alone.[15] *Id.* at 351-52. In reaching this conclusion, the Court referenced the Superior Court's decision in *E.A.M.* to explain that a "defendant's recurring presence, when it causes the victim 'apprehension, fear, and emotional distress,' is sufficient evidence to demonstrate a continued risk of harm under the [Act]." *Id*. (quoting *E.A.M.*, 173 A.3d at 321).

The facts of both *K.N.B.* and *E.A.M.* demonstrate that the continued risk of harm element does not always arise simultaneously with the act of sexual violence or

---

[15] Then-Justice Saylor authored a concurring opinion in *K.N.B.*, finding "some salience in [the defendant's] argument that due process limitations [should] play a role in the analysis in view of the consequences for the defendant stemming from the issuance of an order under the Act." *K.N.B.*, 259 A.3d at 354 (Saylor, J., concurring). Justice Saylor highlighted that a defendant's freedom of movement and right to reputation are affected without any meaningful substantive and procedural due process protections. *Id*. Justice Saylor also noted that the Act does not require the plaintiff to prove the underlying sexual violence or intimidation. Thus, he stated that "it remains an open question whether an order can issue, consistent with due process norms, based upon a mere assertion of criminality combined with proof of harm, where the harm is assessed on a subjective basis." *Id*. at 355-56.

In support of the Superior Court's holding truncating the temporal applicability of protective orders, McKelvey emphasizes the constraints attendant to such orders, arguing that they "entail more than mere annoyance or inconvenience" because a defendant "may lose their right to own firearms, their employment, [and] their freedom to attend their long-time place of worship[.]" McKelvey's Brief at 13; *see* supra p. 15. However, McKelvey does not challenge the constitutionality of the Act on this or any other basis.

intimidation.  In *K.N.B.*, a college student alleged that she was sexually assaulted by a classmate in September 2015, but the victim did not report the incident to the police. *K.N.B.*, 259 A.3d at 344.  It was not until 2018, when the victim encountered the defendant at a Walmart, that she reported the incident to the police and petitioned for a protective order as the encounter triggered a panic attack.[16]  *Id*. at 345.  Similarly, in *E.A.M.*, the mother of a juvenile victim petitioned for a protective order on behalf of her daughter, alleging that the defendant committed an act of sexual violence against her daughter. *E.A.M.*, 173 A.3d at 315.  The petition, which was filed nine months after the alleged act of sexual violence, stated that the defendant "appear[ed] at school events, stare[d] at [the victim], and trie[d] to speak with her" after the incident.  *Id.*  Based on the victim's testimony that the defendant's presence caused her "apprehension, fear, and emotional distress[,]" the Superior Court concluded that there was sufficient evidence to support the trial court's finding that the victim was at a continued risk of harm from the defendant.  *Id.* at 321.

Both *K.N.B.* and *E.A.M.* illustrate that the continued risk of harm element is separate and distinct from the underlying act of sexual violence and intimidation, and that a continued risk of harm may not arise for months or years after the act of sexual violence or intimidation.  *See* supra pp. 16-17 n.14 (discussing other scenarios raised by Amici where a continued risk of harm does not arise until years after the act of sexual violence or intimidation).  Likewise, here, Weatherholtz's encounter with McKelvey at the flea market in 2022—which occurred more than a decade after the sexual violence—increased her fear and anxiety, prompting her to seek relief under the Act.

---

[16]  The victim in *K.N.B.* also testified that she had various interactions with the defendant in 2016 that caused panic attacks and post-traumatic stress disorder.  *K.N.B.*, 259 A.3d at 345.

Moreover, because a victim is able prove a continued risk of harm based on the victim's own subjective fear, *see K.N.B.*, 259 A.3d at 351-52, the point at which there is a continued risk of harm is innately tied to the victim's subjective experience and the unique circumstances of the particular case. As a general matter, however, it is clear that a plaintiff has no basis for relief under the Act until the plaintiff is able to prove that he or she is at a continued risk of harm from the defendant. With no continued risk of harm, the action does not accrue, and the statute of limitations does not begin to run. Therefore, we conclude that the six-year statute of limitations for actions brought under the Act begins to run from the date of the act or circumstance that demonstrates that a plaintiff, or appropriate individual, is at a continued risk of harm from the defendant, as this is the moment an action accrues.

In reaching this result, we acknowledge that a cause of action typically accrues "when an injury is inflicted." *Rice*, 255 A.3d at 246 (citation omitted). However, the remedy provided by the Act is distinguishable from most civil actions in that it provides prospective relief to protect against future risk of harm, rather than compensation for past injury. A plaintiff does not need to prove any injury under the Act to be granted a protective order. *See E.A.M.*, 173 A.3d at 319 (explaining that a victim need not prove that he or she was a victim of sexual violence or intimidation, or that the defendant was convicted of a crime to obtain a protective order under the Act). Thus, the occurrence of sexual violence or intimidation, by itself, does not give rise to relief under the Act. Instead, a plaintiff must prove a continued risk of harm from the defendant to obtain a protective order. While in certain circumstances the continued risk of harm may arise on the same day of the act of sexual violence or intimidation, it is apparent that the element is independent from the injury inflicted by the defendant.

Despite agreeing with our legal determination that a plaintiff has no basis for relief until there is a continued risk of harm, the Concurring and Dissenting Opinion claims that we "effectively nullif[y]" our holding in *K.N.B.* *See* Concurring and Dissenting Op. at 1. Our holding today, which clarifies when the six-year statute of limitations begins for actions brought pursuant to the Act, does not disturb *K.N.B.*'s holding that such actions are subject to a six-year statute of limitations. *See K.N.B.*, 259 A.3d at 352.

Moreover, contrary to the Concurring and Dissenting Opinion's contention, we do not hold that the Act requires a plaintiff to prove a separate act or circumstance following the underlying sexual violence or intimidation to satisfy the continued risk of harm element. *See* Concurring and Dissenting Op. at 2-3. That is a distinct legal question that is not presented in this case. The issue before the Court asks whether the "statute of limitations … begins to run from the date of the act of sexual violence or intimidation committed by [McKelvey], instead of from the date of the act or circumstance that demonstrated a continued risk of harm to the victim?" *Weatherholtz v. McKelvey*, 323 A.3d 585, 586 (Pa. 2024) (per curiam). Because the trial court found that "[McKelvey's] conduct on June 6, 2022 subjected [Weatherholtz] to a continued risk of harm[,]" Trial Court Opinion, 3/31/2023, at 9, and we have not been asked to review this separate determination, we proceed as though this is the point at which Weatherholtz was "at a continued risk of harm from [McKelvey]." 42 Pa.C.S. § 62A06(a)(2). It is against this factual backdrop that we answer the binary question before us and hold that the statute of limitations begins to run from the date of the act or circumstance that demonstrates that a plaintiff, or appropriate individual, is at a continued risk of harm from the defendant, as this is the moment an action accrues.

McKelvey argues that the continued risk of harm element cannot trigger the limitation period because it would render Section 62A07—which allows plaintiffs to seek

extensions of existing protective orders—superfluous. *See* supra pp. 13-14. Section 62A07(d) of the Act provides, in pertinent part, that "[a]n extension of an order may be granted … where the court … finds that the extension is necessary because the defendant engaged in one or more acts or finds some other circumstances that, in the discretion of the court, demonstrate a continued risk of harm." 42 Pa.C.S. § 62A07(d). McKelvey contends that if the statute of limitations is triggered by the continued risk of harm element, "[t]here would be no need to extend an existing order if a new order could be obtained any time that the [continued risk of harm] element is met." McKelvey's Brief at 9. However, Section 62A07(d) has no bearing on the threshold legal question as to when an action accrues. As explained above, an action does not accrue under the Act until a plaintiff is able to demonstrate a continued risk of harm from the defendant. That determination is dispositive as to the issue presently before the Court.

Even so, our holding does not render Section 62A07(d) obsolete. The Act provides that a protective order "shall be for a fixed period of time not to exceed 36 months. The court may amend its order or agreement at any time upon subsequent petition filed by either party." 42 Pa.C.S. § 62A07(c). Given that the Act only permits protective orders to be effective for three years, Section 62A07(d) serves a distinct purpose in permitting a plaintiff to extend this period where necessary. Our holding does not in any way preclude a plaintiff from taking advantage of Section 62A07(d) to seek an extension if a new act or circumstance demonstrates a continued risk of harm. Therefore, we reject McKelvey's surplusage argument.

McKelvey also relies on the fact that the Act limits a protective order to a period of three years and provides a limited window to obtain an order when an incarcerated defendant is released from custody to support his contention that the General Assembly did not intend to "create an unlimited, unending right to a protecti[ve] order[.]" McKelvey's

Brief at 11-12 (citing 42 Pa.C.S. § 62A07(c), (f)). We find that these provisions are irrelevant to the question of when a claim accrues under the Act. While the Act limits a protection order to a period of three years, this limitation relates to the relief afforded a plaintiff, demonstrating only that the General Assembly did not intend for protective orders to last longer than three years. *See* 42 Pa.C.S. § 62A07(c). However, this limitation on relief does not supplant the elements of an action under the Act.

McKelvey's reliance on the incarceration provision, Section 62A07(f), is also misplaced. This provision provides a special exception that allows a victim to "obtain an extension or a subsequent protecti[ve] order" in circumstances "[w]hen the defendant is or was incarcerated and will be released from custody within the next [ninety] days or has been released from custody within the past [ninety] days[.]" 42 Pa.C.S. § 62A07(f). Under this exception, the "plaintiff does not need to show that the defendant engaged in one or more acts that indicate a continued risk of harm to the victim[.]" *Id*. This limited exception only demonstrates that the Act allows victims to obtain protection—without needing to show a continued risk of harm—in the limited timeframe before and after a defendant is released from custody. However, it does not affect the threshold question of when an action accrues under the Act.[17]

In this case, we have only been asked to determine if the six-year statute of limitations "begins to run from the date of the act of sexual violence or intimidation committed by [McKelvey], instead of from the date of the act or circumstance that demonstrated a continued risk of harm to [Weatherholtz]." *Weatherholtz v. McKelvey*,

---

[17] We decline to address McKelvey's argument that the Act, passed in 2015, cannot be retroactively applied to the underlying acts of sexual violence occurring prior to 2015. McKelvey's Brief at 14. McKelvey failed to raise this issue below and did not file a cross-petition for allowance of appeal seeking review in this Court. Accordingly, we find this issue waived. *See Commonwealth v. Hitcho*, 123 A.3d 731, 756 (Pa. 2015) ("[I]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

323 A.3d 585, 586 (Pa. 2024) (per curiam). The Superior Court—finding in favor of McKelvey on this issue—did not pass upon other issues raised by McKelvey, including whether the encounter at the flea market was sufficient to entitle Weatherholtz to relief under the Act. Accordingly, we remand to the Superior Court to review the remaining claims of error raised by McKelvey.

**IV. Conclusion**

We hold that the six-year statute of limitations for actions brought under the Act begins to run from the date of the act or circumstance that demonstrates that a plaintiff, or appropriate individual, is at a continued risk of harm from the defendant, as this is the moment an action accrues. We reverse the judgment of the Superior Court and remand to the Superior Court to review the remaining claims of error raised by McKelvey.

Chief Justice Todd and Justices Wecht, Mundy, Brobson and McCaffery join the opinion.

Justice Dougherty files a concurring and dissenting opinion.